## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 95-CA-00918-SCT

*STATE FARM MUTUAL AUTOMOBILE*
*INSURANCE COMPANY*

*v.*

*EARL GRIMES*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 08/17/95 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES N. COMPTON |
| | GAIL A. CROWELL |
| | PHILLIP GAINES |
| ATTORNEYS FOR APPELLEE: | JUDY M. GUICE |
| | WILLIAM WALKER, JR. |
| | RUSSELL GILL |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 10/22/98 |
| MOTION FOR REHEARING FILED: | 1/2/98 |
| MANDATE ISSUED: | 12/17/98 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is granted. The original opinions are withdrawn and these opinions are substituted therefor.

¶2. In this matter we have for review a judgment based upon a jury award of actual and punitive damages arising out of the failure to pay an insurance claim for theft. After careful review of the record we conclude that the evidence presented was sufficient such that we cannot say that the trial court erred in allowing the issue of punitive damages to go to the jury and to allow a fair minded fact finder to conclude as the jury did. Accordingly, we affirm.

**I.**

¶3. Earl Grimes, an investigator with the Biloxi Police Department, owned a 1969 Corvette which he purchased in 1989 for $2,600.00 On the morning of July 21, 1991, Grimes noticed that the car was missing, and he reported the apparent theft to the Jackson County Sheriff's Office two hours later. Later that day, the Corvette was recovered from an apartment complex parking lot a few blocks from Grimes' home. Although the exterior of the vehicle was not damaged, the engine, transmission, drive shaft, front shock absorbers, radiator, stereo, and battery had been removed. Grimes made a theft claim to State Farm, his auto insurer, on July 22, 1991.

¶4. Over the next few weeks, State Farm inspected the car and interviewed Grimes and other witnesses. Estimator Dennis Laubmeir reviewed the claim and reached an early conclusion that "this claim stinks." The claim was sent to the State Farm Special Investigation Unit on July 30, 1991. On August 21, Grimes gave a statement under oath before State Farm counsel with his own counsel present. The statement under oath was adjourned until August 28, at which time Grimes was questioned once again. A third questioning under oath was conducted on September 11, 1991, at which time Grimes provided various authorizations and financial documents to State Farm.

¶5. Following this investigation, State Farm concluded that the circumstances of the loss and recovery of the car were inconsistent with a theft. State Farm points to information which it gathered which indicated that Grimes was tired of mechanical problems with the car, that he seldom drove it, and that he had filed prior claims for theft and vandalism. State Farm further notes that Grimes was a racing enthusiast and hobbyist mechanic who, it contend, possessed the skill and expertise needed to remove the parts stolen from the Corvette.

¶6. From this information, State Farm concluded that Grimes had the motive and opportunity to steal the parts himself in order to defraud State Farm and it denied his theft claim. State Farm supports its decision by noting that Grimes was not awakened by the theft of the car, although Grimes testified that he had taken sleeping pills the night before the theft. State Farm also notes that there was no physical indication that the car was towed from its parked location outside of Grimes' residence. State Farm also asserts that the physical condition of the car following the alleged theft was not typical of cars following theft.

¶7. Based on these and other factors, State Farm formally notified Grimes that his claim was being denied on November 11, 1991. On December 30, 1991, Grimes filed suit in the Circuit Court of Hinds County against State Farm, seeking both compensatory and punitive damages as well as attorney's fees. A trial was held on July 17-20, 1995, following which the jury returned a verdict of $1,900.00 in contractual damages and $1,250,000.00 in punitive damages against State Farm. State Farm's post trial motions were denied, and State Farm timely filed an appeal before this Court, raising a number of issues with which we deal *ad seriatum.*

## II.

### A. THE VERDICT ON THE THEFT CLAIM IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶8. The standard for deciding upon a motion for judgment notwithstanding the verdict requires this Court to consider the evidence in the light most favorable to the non-moving party and to give the non-moving party the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts are

nevertheless so overwhelmingly in favor of the moving party that reasonable and fair-minded jurors could not have arrived at a contrary verdict, then this Court must reverse and render in favor of the moving party. *Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith*, 523 So. 2d 324, 326 (Miss. 1988).

¶9. This Court concludes that the facts of the present case are not so strongly in favor of State Farm as to warrant the imposition of a judgment notwithstanding the verdict. State Farm's evidence which points to possible fraud on the part of Grimes does raise a slight degree of suspicion that Grimes may have removed the engine and transmission himself. However, granting all reasonable inferences to Grimes, this evidence is clearly not so overwhelmingly in favor of State Farm that impartial and fair jurors could not have validly concluded that State Farm wrongfully denied coverage under the theft policy. The jury's verdict regarding the denial of the theft claim is affirmed.

### B. THE PUNITIVE DAMAGES VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

### C. THE AMOUNT OF THE PUNITIVE DAMAGES IS EXCESSIVE.

¶10. A closer issue is presented by the jury's award of $1,250,000.00 in punitive damages. The trial judge refused to grant Grimes a directed verdict with regard to the denial of the theft claim, and State Farm argues that this fact indicates that it did in fact have an arguable basis for denying the claim. This Court has held that the fact that a trial judge denied a motion for directed verdict on the underlying contract claim generally indicates that a punitive damages instruction should not have been submitted to the jury. *Blue Cross & Blue Shield of Mississippi, Inc. v. Campbell*, 466 So. 2d 833, 843 (Miss. 1984). However, this Court has, in recent cases, backed away from a blanket holding that a punitive damages instruction should not be submitted to the jury if a directed verdict was denied on the underlying contract issue. This Court noted in *Dixie Insurance Co. v. Mooneyhan*, 684 So. 2d 574 (Miss. 1996) that:

> Where the trial judge determines there was no arguable reason to deny the claim and the insurer may be deemed to have acted unfairly and in bad faith, the issue of punitive damages should be submitted to the jury regardless of whether or not a directed verdict was granted to the insured.

*Id.* at 583 (citing *Andrew Jackson Life Ins. Co. v. Williams,* 566 So. 2d 1172, 1185 (Miss. 1990)).

¶11. This Court in *Mooneyhan* thus noted that a judge may validly conclude that an insurer lacked an arguable reason to deny the claim and that it acted in bad faith notwithstanding the fact that he refused a directed verdict on the underlying contract claim. There are subtle yet important differences in the applicable standards for deciding upon a directed verdict on the underlying contract claim and in deciding whether a punitive damages instruction should be submitted to the jury.[1] It is also true that there is a natural tendency on the part of many trial judges to allow an empaneled jury, which has given up its time and diligently viewed the evidence, to reach a decision on the merits of the case rather than rendering judgment himself. A strict rule of law which held the denial of a directed verdict motion to be inconsistent with the submission of a punitive damages instruction to the jury, while containing a certain logic and appeal, would therefore be unsound.

¶12. The law of this State does not impose punitive damages in cases in which a carrier is determined to have merely reached an incorrect decision in denying a given claim. The issue of punitive damages should not be submitted to the jury unless the trial court determines that there are jury issues with regard to

whether:

    1. The insurer lacked an arguable or legitimate basis for denying the claim, *and*

    2. The insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights.

*Life & Cas. Ins. Co. of Tennessee v. Bristow*, 529 So. 2d 620, 622 (Miss. 1988). This Court held in *Standard Life Ins. Co. of Indiana v. Veal*, 354 So. 2d 239, 248 (Miss. 1977) that "[o]f course, if an insurance company has a legitimate reason or an arguable reason for failing to pay a claim, punitive damages will not lie."

¶13. In determining whether State Farm had an arguable basis for denying the claim in the present case, the Court should consider the facts that were available to State Farm at the time the claim was denied. In this regard, State Farm submits that:

> State Farm had the following information at the time of denial of the claim. The disappearance of the car was suspicious because there were no signs of forced entry to the car or steering column and the car could not be steered without the key. Grimes had the only set of keys. . . . The physical facts were inconsistent with theft because the condition of the vehicle was much neater than the typical vehicle recovered after theft. Hard-to-remove parts were taken while easily-removed parts were not. . . . The car was recovered in front of the apartment manager's office, so it would be discovered, and not stripped further. There was no damage to fiberglass, which negated the possibility of this low-slung body having been towed by a standard wrecker. . . . The behavior of Grimes was inconsistent with theft beginning with his two-hour delay in reporting the theft. . . . Grimes had a financial motive to stage the loss because he had tried unsuccessfully to sell the car. He had frequent mechanical problems with the car and was, in his own words, "tired of messing with it.". . . He was adept at trading engines and parts between vehicles, gave three different versions of where the engine came from, and could not recall the serial number of the engine although he ran it on the NCIC when he bought the car. He collected on a prior vandalism loss to the Corvette and had the car totally repainted, and changed the color. . . . Other matters tending to implicate Grimes included the "word on the street" that the theft was an inside job and that the parts were at Joe's Garage.

¶14. In the view of this Court, most of the "evidence" which State Farm cites in support of its denial of the claim is rather weak. State Farm's vague reference to the "word on the street" is less than convincing, as is the assertion that Grimes' financial problems gave him a motive to commit fraud. Grimes' financial problems, as evidenced by his "maxed out" credit cards, were no different than those faced by many, and there should not be a different standard for the payment of claims of wealthy claimants than those with financial difficulties.

¶15. Slightly more persuasive is State Farm's evidence indicating that the theft of the Corvette was not typical of auto thefts. The day after the theft was reported, Grimes met with Jackson County Deputy Sheriff Hartwell Lott in order to look at the car. Lott eventually testified on behalf of State Farm at trial that the car's condition was not typical of any thefts he had investigated before. In particular, Lott testified that he was surprised by the neatness and precision with which the various parts of the automobile had been taken apart. Lott specifically referred to the fact that the thief had taken the time to replace the hood of the automobile after being forced to remove it in order to take out the engine. Lott also found it unusual that the

wires had been removed with electrical tools instead of being cut.

¶16. Virgle Luke, a retired auto theft investigator with the Mississippi Highway Patrol, testified on behalf of State Farm at trial that "the location and manner in which the vehicle was found. . . the physical damage or what was missing of the vehicle is not consistent with actual theft." Luke further testified that he had never seen the front shocks taken off of a stolen car, nor had he seen a stolen car in which the thief took the time to put the hood of the car back on. Luke also testified that "normally there is some type of forced entry and some method to use to make ignition and remove the car." In addition to the evidence of the unusual nature of the theft, State Farm points to the fact that Grimes was a former mechanic who possessed the skill and expertise to remove the engine and transmission if he had been so inclined.

¶17. Although the present issue is a very close one, this Court concludes that a jury could have validly found that State Farm lacked an arguable basis for denying the claim. State Farm's case is based largely on innuendo and testimony that the crime was atypical of auto thefts in this State. Most conspicuous in its absence is any direct evidence whatsoever that Grimes committed the fraud, such as testimony by witnesses who saw Grimes stripping the Corvette or to whom Grimes admitted to having committed the fraud. The thief left the stripped car outside an apartment complex on the night of the theft, but State Farm introduced no testimony that Grimes was spotted outside the complex on the night of the crime. State Farm submits that the "word on the street" indicated that "this was an inside job and that the parts were at Joe's Garage." However, State Farm did not introduce any testimony from employees or customers of Joe's Garage indicating that Grimes had taken the parts to the garage.

¶18. State Farm's "evidence" as to the unusual nature of the theft was, in the view of this Court, sufficient to submit the case for further review and investigation, and State Farm did just that, referring the case to their Special Investigations Unit. However, a jury could have validly concluded that, absent some direct evidence that Grimes had committed the fraud in question, a denial of the claim was not sufficiently supported by credible evidence as to lead a reasonable insurer to deny the claim. This Court thus affirms the jury's finding that the claim was denied without arguable basis.

¶19. This is not a case in which the insurance company was found to have had an arguable reason to deny a claim. Nor is it a case in which the claim was denied because of some clerical error or other inadvertence for which the imposition of punitive damages would simply be unfair. *See Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290 (Miss. 1992). On the contrary, here the jury could conclude that the insurer deliberately refused to pay in the face of knowledge that it could not reasonably expect to succeed on any claimed defense based upon the insured's suspected involvement in the theft of his automobile. This was not inadvertence promptly corrected; the evidence was amenable to the conclusion that there was deliberate indifference if not hostility to the right of the insured which was never corrected. After an investigation over a period which was clearly reasonable in duration from the standpoint of the insurance company, the company simply had no proof that a theft had not occurred to refute the insured's sworn claim that there was a theft supported by the fact that a motor and transmission was indubitably missing. It should have paid, and, because it did not, the issue of punitive damages was properly put before the jury.

¶20. There are other possible interpretations of the impact and import of the words "this claim stinks," used at the onset of the investigation conducted by State Farm, which would differ from that which we must assume was arrived at by the jury. The inference possibly drawn by this jury, however, is also within the range of possible inferences. The jury had the benefit of seeing the witnesses testify in person. It is for the

jury to assess whether State Farm conducted a good faith investigation as opposed to one designed to reach a desired result, the denial of the claim. Theft cases are difficult. Because there is an opportunity for financial gain, a motive to fabricate is always present. The owner/insured usually has the opportunity and capability to dispose of the property. Thieves behave differently in terms of method.

¶21. The issue, then, is to determine when an insurer is justified in refusing to pay a theft claim based upon suspicion. That is, under what circumstances is it reasonable as a matter of law for an insurance company to refuse payment and put the insured to the expense of litigation? And, what risk does the insurer take when it is found to have acted unreasonably in refusing payments? The suggestion that consequential damages should be awarded has some merit. It is a half-measure, however.

¶22. The question remains whether any court, when faced with a knowing deliberate action as opposed to an isolated clerical error, can further distinguish those cases in which the insurer has no reasonable basis to deny and is therefore liable for consequential damages, from those in which the insurer has no reasonable basis to deny and may be liable for punitive damages. We conclude that this Court, as an appellate court, has no basis for making such a distinction. Where the trial court allows the question of reasonableness to be put to the conscience of the community, the civil jury, that decision should stand absent compelling grounds for reversal. We find no compelling grounds here.

## D. CONSTITUTIONAL CHALLENGES TO THE PUNITIVE DAMAGES PROCEDURE.

¶23. State Farm briefly urges that this Court reconsider our holding in *Mooneyhan* that this State's punitive damages scheme is constitutional. State Farm raises no new issues in this regard, but merely notes once again the concerns expressed by the United States Supreme Court in *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991). Given that State Farm provides no new arguments in this regard, this Court declines State Farm's invitation to reverse our holding in *Mooneyhan* and hold our punitive damages scheme unconstitutional.

## E. THE TRIAL COURT ERRED ON KEY EVIDENTIARY RULINGS, WHICH SUBSTANTIALLY AFFECTED THE OUTCOME OF THE CASE.

¶24. State Farm argues that the trial judge erred in disallowing evidence that Grimes had been suspended from his police work pending a review of a shooting incident. State Farm argues that the prejudicial value of this evidence did not substantially outweigh its probative value pursuant to Miss. R. Evid. 403. The trial judge can not be said to have abused his discretion in excluding this evidence, given that the evidence had a great potential to unduly prejudice the jury while having little probative value. This point of error is not well taken.

¶25. State Farm also asserts that the trial court erred in admitting an estimate of the cost of repairs made by Lee's Auto Shop as an adoptive admission pursuant to Miss. R. Evid. 801(d)(2). It cannot be said that the trial judge abused his discretion in admitting the estimate as an adoptive admission, given that, as noted by Grimes, State Farm "solicited the estimate, incorporated it into their records, and used it in its conclusion that the claim should be paid as a total loss." In addition, State Farm had the opportunity to elicit testimony from Lee Paramenter, who prepared the estimate, in order to clarify aspects in which the estimate might have been "a little high." This point of error has no merit.

¶26. Finally, State Farm argues that the trial judge erred in allowing Grimes to impeach John Bartlett, who

provided expert testimony for State Farm, with a pamphlet which State Farm sent to its policyholders. The pamphlet informed the policyholders that 10% of all auto thefts occurred by towing, and Grimes impeached Bartlett with this pamphlet after he denied knowing that 10% of all auto thefts were in fact were carried out by means of towing. State Farm argues that the pamphlet was improperly admitted, given that it was not disclosed to the defense prior to trial. This Court concludes that, even assuming that the pamphlet should not have been admitted, the admission of this evidence was of very minor importance and did not substantially affect the outcome of the trial.

## F. JURY INSTRUCTION 12, 13 AND 14 WERE ERRONEOUSLY GRANTED.

¶27. State Farm argues that Jury Instructions 12 and 13 were misleading. Jury Instruction 12 instructed the jury to not consider any evidence obtained by State Farm after the claim was denied, given that this State's bad faith law considers the denial of claims based on the information that the insurer had at the time the denial was made. ***Bankers Life & Cas. Co. v. Crenshaw***, 483 So. 2d 254, 273 (Miss. 1985). State Farm argues, however, that the instruction had the potential to confuse the jury with regard to the separate issue of whether State Farm conducted a reasonable investigation (discussed in Instruction 13) in that it might preclude its consideration of post-denial expert testimony on which State Farm relied.

¶28. Instructions 12 and 13 deal with separate issues, and this Court concludes that any possible confusion that may have resulted on the part of the jury is speculative. Instruction 12 provides that the jury is to limit its consideration to the issue of whether State Farm had an "arguable reason for denying the claim," while Instruction 13 deals with the different issue of the reasonableness of State Farm's investigation. State Farm also argues that Instruction 13 does not advise the jury that grossly negligent or similar conduct must be demonstrated in order to justify an award of punitive damages. It is clear, however, that this information was provided in Instructions 15 and 16.

¶29. State Farm argues that Instruction 14 was also in error, in that this instruction, while noting that an arguable reason exists when the denial of the claim is a result of "mere forgetfulness, oversight, or simple negligence" does not allow the jury to consider a "deliberate decision to deny a claim based on evidence sufficient to create a jury issue, but insufficient to persuade the jury." Our conclusion above is that the fact that the existence of an arguable reason is presented to the jury does not preclude jury consideration of the issue of punitive damages. The issue of punitive damages is presented to the discretion of the jury and never required of it. Thus, this jury was free to decide both whether there was an arguable reason and whether punitive damages were warranted pursuant to Instruction 15, 16, 17 and 18.

¶30. **AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ., AND McRAE, J., CONCUR. PRATHER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS, J. WALLER, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS., J. SMITH, J., NOT PARTICIPATING.**


**PRATHER, CHIEF JUSTICE, DISSENTING:**


¶31. Because the punitive damages instruction in this case was not supported by the evidence, I respectfully

dissent. I agree that State Farm lacked an arguable basis for denying Grimes' claim, but State Farm did not act with malice, gross negligence, nor reckless disregard for Grimes' rights in denying his claim. Therefore, the punitive damages award should be reversed.

¶32. The record indicates that State Farm investigated Grimes' claim extensively, and this fact distinguishes the present case from cases in which the insurer denies the claim following an inadequate investigation. See *Bankers Life & Cas. Co. v. Crenshaw*, 483 So.2d 254 (Miss. 1985). There is similarly no evidence that State Farm or its agents made a misrepresentation, nor that the policy language was contrary to public policy. It is apparent that the State Farm estimator genuinely believed that the claim was a fraudulent one and acted in good faith in processing the claim.

¶33. Also persuasive is the evidence that the alleged theft was atypical of auto thefts in this State. Indeed, there was no evidence of forced entry on the car, nor was there any evidence that the car had been towed. Jackson County Deputy Sheriff Hartwell Lott testified that he was surprised by the precision with which the car had been taken apart, and he agreed with retired auto theft investigator Virgil Luke's testimony that the condition of the car was different from that typically found in auto theft cases. The fact that two officers deemed the theft suspicious supports a finding that State Farm's conduct was not malicious.

¶34. Furthermore, Grimes had made prior claims on the car, including a vandalism claim which was deemed to be suspicious. Grimes was also an experienced mechanic who possessed the skills necessary to dismantle the car. In addition, there was testimony that Grimes was tired of dealing with frequent breakdowns and was eager to sell the automobile.

¶35. In considering whether an insurer acted with "malice" or "gross negligence" in denying a theft claim, some consideration should be given to the difficult task faced by an insurer processing allegedly fraudulent theft claims. But, clearly, State Farm was motivated by an honest and good faith belief that the claim was fraudulent. Indeed, Grimes' claim was valued at $1,900, and it is apparent that State Farm spent considerably more to investigate and challenge the claim. State Farm had no apparent motive for allocating such resources to contest this rather minor claim, if it did not genuinely believe that Grimes had committed fraud.

¶36. I also disagree with the standard of review which the majority has chosen to employ, which is:

> Where the trial court allows the question of reasonableness to be put to the conscience of the community, the civil jury, that decision should stand absent compelling grounds for reversal. We find no compelling grounds here.

This "compelling grounds for reversal" language is vague and grants an unduly high level of deference to jury verdicts in punitive damages cases.

¶37. Furthermore, I respectfully assert that the majority has misapplied the punitive damages standard by holding that:

> [State Farm] should have paid, and, because it did not, the issue of punitive damages was properly put before the jury.

The standard for determining whether a punitive damages instruction should be submitted to the jury is whether a reasonable jury could conclude that (1) the claim was denied without an arguable basis and (2)

the actions of the insurer evidence gross negligence, malice, or reckless disregard for the rights of the insured. Under the majority's rationale, the punitive damages issue would go to the jury in virtually all cases in which the insured prevails on the underlying contract claim. That is, the punitive damages instruction would be granted where the jury determines the insurer "should have paid." Once a jury determines that punitive damages are appropriate, the insurer would be faced with the majority's deferential "absent compelling grounds for reversal" standard of review.

¶38. Furthermore, the majority applies a "reasonableness" standard for holding that State Farm lacked an arguable basis for denying the claim and states: "a jury could have validly concluded that ... a denial of the claim was not sufficiently supported by credible evidence as to lead a reasonable insurer to deny the claim." I agree that the reasonableness standard is the proper standard of review on the arguable basis issue.[2] However, the majority appears to be applying a standard in a manner contrary to precedent. A contrary standard is set forth in *State Farm Fire and Casualty Co. v. Simpson*, 477 So.2d 242 (Miss. 1985) and applied in subsequent cases. See *Andrew Jackson Life Ins. Co. v. Williams*, 566 So.2d 1172, 1185 (Miss. 1990); *Cossitt v. Nationwide Mut. Ins. Co.*, 551 So.2d 879, 885 (Miss. 1989). It would be preferable to address the conflict with prior decisions of this Court.

¶39. I would overrule this Court's definition of arguable basis in *Simpson,* which holds that:

> We are of the opinion the term "legitimate or arguable reason," although spawning much comment in our cases and in briefs and arguments of counsel, is nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the heightened level of an independent tort. Additionally, the very term expresses the holding of this Court establishing a distinction between ordinary torts, the product of forgetfulness, oversight, or the like; and heightened torts, which are the product of gross, callous or wanton conduct, or, if intentional, are accompanied by fraud or deceit.

*Simpson*, 477 So.2d at 250. The *Simpson* "gross, callous, or wanton" standard is deficient, in my view, in that it sets forth a definition of "arguable basis" which is overly strict and which is largely indistinguishable from the second part of the punitive damages test. Under the *Simpson* standard, a denial of an undisputably valid claim based on a clerical or other non-malicious error is arguable as a matter of law. This is improper.

¶40. A clearer definition of "arguable basis" is particularly important in light of the recently created right of an insured to receive "actual damages" such as attorneys fees and court costs in cases in which a claim is denied or delayed without an arguable basis, but where the insurer did not act with the requisite level of bad faith to make appropriate the awarding of punitive damages. See *Universal Life Ins. Co. v. Veasley*, 610 So.2d 290 (Miss. 1992).

¶41. In an era when the Legislature and the United States Supreme Court are placing limitations on punitive damages, the majority expands further upon this remedy in bad faith cases. The Legislature has recently passed Miss. Code Ann. § 11-1-65, which requires "clear and convincing" proof before punitive damages are awarded in most cases. This Court has held that this statute does not apply to "contracts" and thus to bad faith denial of contract claims[3], but there is no need to widen the scope of the punitive damages remedy.

¶42. I would reverse the award of punitive damages and limit Grimes' recovery to "actual damages," including attorneys' fees and court costs. Given that the majority affirms the jury's award of punitive

damages, however, it should consider and address State Farm's argument that it is entitled to a remittitur. This Court has held that:

> No hard and fast rule exists for establishing the maximum amount of punitive damages available in any given case. . . . Instead the amount must be considered in light of several factors. First, the amount awarded should serve to punish the insurer and to deter it from committing similar offenses in the future. Second, the amount should serve as an example set to deter others from committing similar offenses. Third, the amount awarded should account for the insurer's pecuniary ability and financial worth.

*Valley Forge Ins Co./CNA Ins. Co. v. Strickland*, 620 So.2d 535, 540-41 (Miss. 1993).

¶43. This Court recently held in *Dixie Insurance Co. v. Mooneyhan*, 684 So.2d 574, 587 (Miss. 1996) that the "punitive damages awarded in this case were excessive and we refuse to enforce the award," and we accordingly remanded for a new trial with regard to the issue of punitive damages. *Mooneyhan*, 684 So.2d at 587. As in *Mooneyhan,* the amount of punitive damages in the present case is excessive. This is particularly true, given that Grimes' actual damages are relatively minor, and that State Farm's conduct was not so egregious as to dictate a verdict of $1,250,000 in punitive damages.

¶44. A remittitur of the punitive damages award is also supported by the recent United States Supreme Court case of *BMW of North America v. Gore*, 116 S.Ct. 1589 (1996), in which a $2,000,000 punitive damages award was reversed where only $4,000 in actual damages had been awarded by the jury. The United States Supreme Court held that BMW's conduct was not sufficiently reprehensible to justify the awarding of punitive damages in an amount so disproportionate to the actual damages suffered:

> Of course, we have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award. Indeed, low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine. ... When the ratio is a breathtaking 500 to 1, however, the award must surely 'raise a suspicious eyebrow.'

*Gore*, 116 S.Ct. at 1602-03. Thus, the United States Supreme Court considered a ratio of punitive damages to compensatory damages of 500 to 1 to be "breathtaking." The punitive damages in the present case were $1,250,000, and the compensatory damages were $1,900 -- a ratio of 658 to 1. For this reason, State Farm's request for a remittitur has merit, and should have been considered by this Court.

¶45. In conclusion, the punitive damages instruction was not supported by the evidence. That is, State Farm did not act with malice, gross negligence, nor reckless disregard for Grimes' rights in denying his claim, and the issue of punitive damages should not have been submitted to the jury. I would reverse the award of punitive damages and limit Grimes' recovery to actual damages, including attorneys' fees and court costs. Furthermore, I would overrule the definition of "arguable basis" in *Simpson* and adopt a "reasonableness" standard for determining whether an insurer had an arguable basis for denying a claim. Finally, although I disagree with the majority's affirming the award of punitive damages, the majority should have considered State Farm's valid request for a remittitur. For the foregoing reasons, I must respectfully dissent.

**MILLS, J., JOINS THIS OPINION.**

**WALLER, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶46. I concur with the result in this case that the jury was justified in finding State Farm had no reasonable basis to deny Grimes' claim and may be liable for punitive damages. I respectfully dissent in the amount of punitive damages awarded which I find to be arbitrary and unreasonable.

¶47. In ***BMW of N. Am., Inc. v. Gore***, 517 U.S. 559 (1996), the Supreme Court held an award of punitive damages is constitutionally impermissible if it is grossly excessive when considered in light of the reprehensibility of the conduct of the defendant. ***Gore***, 517 U.S. at 575-76. Although the Supreme Court continued to reject "the notion that the constitutional line is marked by a simple mathematical formula," the Court stated "[w]hen the ratio is a breathtaking 500 to 1, however, the award must surely 'raise a suspicious judicial eyebrow.'" ***Id.*** at 582-83 (quoting ***TXO Production Corp. v. Alliance Resources Corp.***, 509 U.S. 443, 458, 482 (1993) (O'Conner, J., dissenting)). Like Justice Stevens in ***Gore***, I am not prepared to draw a bright line marking the limits of an acceptable punitive damages award. I am, however, convinced the award of $1,250,000 in punitive damages in this case is grossly excessive.

¶48. State Farm's conduct in this case was improper. Grimes paid premiums and is entitled to recover punitive damages from State Farm for the unjust withholding of payment of $1,900 in benefits under the policy. Having said this, State Farm's conduct simply does not rise to a level that warrants an award with a ratio of punitive damages to compensatory damages of 658 to 1. The fundamental purpose of a punitive damage award against a defendant is "to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future." Restatement (Second) of Torts § 908(1) (1995). An award of $1,250,000 is not necessary to meet this goal.

¶49. When an award of punitive damages is excessive, a remittitur is appropriate as set out by § 11-1-55 of the Mississippi Code. In ***Mutual Life Insurance Company of New York v. Estate of Wesson***, 517 So. 2d 521 (Miss. 1987), finding a jury award on a claim of bad faith was excessive, we ordered a remittitur of $6,500,000 on a punitive damage award of $8,000,000. ***Wesson***, 517 So. 2d at 533. Among the factors considered by the Court in ***Wesson*** were those enumerated in ***Bankers Life and Casualty Co. v. Crenshaw***, 483 So. 2d 254 (Miss. 1985), *aff'd*, 486 U.S. 71(1988). ***Id***. at 532 (citing ***Crenshaw***, 483 So. 2d at 278). While noting deterrence and punishment are primary objectives in awarding punitive damages, the Court noted, a "strong consideration was the proportion of actual damages to punitive damages."***Id.*** at 532-33.

¶50. The ratio in ***Wesson*** was "ninety-two (92) times (in round figures) the admitted amount of the actual damages."***Id.*** at 533. I note for Grimes his multiple would still be much higher after remittitur than was the pre-remittitur figure in ***Wesson***. However, in Grimes' case no tender of benefits was made and a low multiple would yield an inequitable result because of the low amount of compensatory damages he was forced to collect by expensive and protracted litigation.

¶51. Therefore, I would order a remittitur in the sum of $625,000 on the punitive award of $1,250,000. If the appellee, Grimes, enters into such remittitur so as to reduce the punitive damages award to $625,000 within ten days after the judgment of this Court becomes final, then the award as reduced will be affirmed. Otherwise, the cause should be reversed and remanded to the lower court for trial upon the issue of punitive damages alone.

**ROBERTS, J., JOINS THIS OPINION.**

1. The directed verdict standard, for example, requires the trial judge to give all reasonable inferences which may be drawn from the evidence to the non-moving party in deciding whether the case should be taken from the jury. *White v. Thomason*, 310 So. 2d 914, 916-17 (Miss. 1975). The punitive damages standard is a stringent one, but it does not require the jury to give all reasonable inferences to the insurance carrier in deciding whether the two-part test is met.

2. I also agree with the majority's conclusion that a trial judge's denial of a directed verdict motion on the underlying contract claim should not preclude the issue of punitive damages from being presented to a jury. As noted by the majority, many trial judges have a natural inclination to permit a jury to reach a decision on the merits of the case rather than rendering judgment themselves, and this Court should not place undue importance on the judge's ruling on the directed verdict issue.

3. See *American Funeral Assurance Co. v. Hubbs*, 700 So.2d 283 (Miss. 1997).