GRIFFIS, P.J.,
for the Court:
¶ 1. Thomas and Brenda Chapman appeal the grant of summary judgment to Coca-Cola Bottling Company (Coke), American Casualty Company (American Casualty), and CNA ClaimPlus (CNA). We affirm.
FACTS AND PROCEDURAL HISTORY
¶2. On June 4, 2001, Thomas, while working as a. route salesman for Coke, injured his back when building a display at a store in Bay Springs, Mississippi. Thomas called the Coke plant manager,. Willie Meador, who instructed him to go to. Occupational and Rehabilitative Associates LLC (ORA), for evaluation and treatment.
¶ 3. At ORA, Thomas saw Dr. Rob Coleman, who prescribed epidural-steroid injections and continued him on muscle relaxers, which Thomas took due to a prior injury. Thomas previously injured his lower back while working at Coke in 1991. Thomas was also in a vehicle rollover accident in 2000.
¶ 4. Dr. Coleman further recommended that Thomas undergo physical therapy at Southeastern Regional Medical Center. When Thomas returned to work, he was placed on light duty. However, despite being placed on light duty, he was unable to perform his assignments without help from other employees, and he eventually left Coke.
¶ 5. After administering some treatment, Dr. Coleman referred Thomas .to Dr. David Lee, a neurosurgeon at the Southern Neurological Institute in Hattiesburg, Mississippi. Thomas first visited Dr. Lee on July 14, 2001. Subsequently, Dr. . Lee performed decompression back surgery on Thomas on August 28, 20Q1. Dr. Lee found that Thomas reached maximum medical..improvement on March 15, 2002.
¶6. After Thomas’s Juné 4, 2001 incident, Tammy Saul, an administrator at Coke, submitted an “Employer’s First Report of Injury or Occupation Disease” (B8) form on June 6, 2001. Based on Coke’s B3 form, .CNA, as American Casualty’s .claims adjuster, opened an active investigation file. Coke initially approved some of Thomas’s medical expenses. However, Thomas’s doctors at ORA determined that Thomas’s injuries resulted from a preexisting condition and not the June 4, 2001 incident.
¶ 7. In a letter.- dated June 26,2001, ORA reported to Coke:
The doctors of our clinic have all reviewed the chart of Mr. Thomas Chapman and are all in agreement that Mr. Chapman’s condition is not work-related but it is aggravated by work. We have reviewed the MRI done by our clinic and reviewed the MRI that was done previously., We feel that all of his injuries are from previous accidents and no hew injury was noted. We also agree that Mr. Chapman needs to continue to be off work as the cbndition is not caused by work but aggravated by work.
The report was signed by Dr. Ronnie Ali, head of ORA at the time.
¶ 8. On June 29, 2001, Margaret Redfer-rin, an adjustor for CNA, spoke with Mea-dor regarding Coke’s information on the incident. ’ Meador told Redferrin that Thomas’s doctors indicated the injuries resulted from the 2000 vehicle accident and not the June 4,2001 incident.
¶ 9. On August 24,2001, Redferrin spoke to Meador. again, and Meador confirmed the previous determination that Thomas’s injuries stemmed' from the 2000 vehicle accident. After speaking with Meador and *680 reviewing Thomas’s medical records received by CNA at the time, Redferrin closed Thomas’s file on September 17, 2001, after finding no workers' compensation claim existed.
¶ 10. On July 31, 2002, Thomas filed a petition to controvert with the Mississippi Workers’ Compensation Commission. After notice of the petition to controvert, Redferrin reopened Thomas’s file on August 18, 2002.
¶ 11. On December 16, 2005,. the administrative judge held a hearing on the issues of whether Thomas sustained a work-related injury to his back on June 4, 2001, the existence of temporary disability, and the reasonableness and necessity of medical treatments. Both sides presented medical testimony at the hearing.
¶ 12. The judge ruled that the injury was compensable and awarded past-due compensation for temporary total disability from June 6, 2001, through March 15, 2002.' American Casualty, CNA, and Coke appealed the ruling to the Commission. The Commission heard the case on July 31, 2006, and affirmed the ruling by an order dated August 23, 2006.
¶ 13. On May 30, 2007, the parties agreed to, and the Commission approved, a settlement between the parties.
¶ 14. On April 21, 2008, Thomas and Brenda filed a complaint in circuit court against Coke, CNA, American Casualty, and ORA. The Chapmans claimed that Coke, CNA, and American Casualty acted in bad faith by wrongfully denying benefits that arose from Thomas’s underlying com-pensable workers’ compensation claim and refusing to pay Thomas’s workers’ compensation claim. The Chapmans also claimed that CNA -wrongfully denied and delayed payments of medical bills as part of the agreed settlement. Further, the Chapmans asserted Coke, CNA, and American Casualty all conspired with ORA to provide a “sham” report in order to prevent workers’ compensation payments.
¶ 15. ORA filed a motion for summary judgment, which the circuit court granted on April 30, 2013. The circuit court granted the motion in light of ORA’s uncontested status as a dissolved corporation without assets. See Miss.Code Ann. § 79-4-14.21 (Rev.2013). No appeal was taken from this decision.
¶ 16. After the completion of discovery, American Casualty and CNA filed a motion for summary judgment. Coke joined the motion. The circuit court granted summary judgment in favor CNA, American Casualty, and Coke, and issued a final order on November 6, 2013. It is from this decision that the Chapmans now appeal.
STANDARD OF REVIEW
¶ 17. “We review the grant or denial of a motion for summary judgment de novó, viewing the evidence in the light most favorable to the party'against whom the motion has been made.” Karpinsky v. Am. Nat’l Ins. Co., 109 So.3d 84, 88 (¶ 9) (Miss.2013).
¶ 18. Under a de novo review,
summary judgment is appropriate if the evidence before the Court — admissions in the pleadings, answers to interrogatories, depositions, affidavits, etc. — shows there is no genuine issue of material fact, and the moving party is entitled to [a] judgment as a matter of law. This Court does not try issues on a [Mississippi] Rule [of Civil Procedure] 56 motion, but ónly determines whether there are issues to be tried. In reaching this determination, the Court examines affidavits and other evidence to determine whether a triable issue exists, rather than the purpose of resolving that issue.
*681 Harper v. Cal-Maine Foods, Inc., 43 So.3d 401, 403 (¶ 4) (Miss.2010) (citations omitted).
ANALYSIS

I. Whether the circuit court erred in granting summary judgment to American Casualty and CNA.

¶ 19. “[Sjummary judgment ‘is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party’s case, and on which that party will bear the burden of proof at trial.’ ” Bucket v. Chaney, 47 So.3d 148, 153 (¶ 10) (Miss.2010) (quoting Watson Quality Ford Inc. v. Casanova, 999 So.2d 830, 832 (¶ 7) (Miss.2008)). Therefore, the Chapmans had the burden to provide sufficient evidence to show the existence of bad faith on the part of American Casualty and CNA.

A. American Casualty

¶ 20. For a claimant to maintain a bad-faith claim against an insurer, he “must show that the insurer lacked an arguable or legitimate basis for denying the claim, or that the insurer committed a wil[l]ful or malicious wrong, or acted with gross and reckless disregard for the insured’s rights.” Liberty Mut. Ins. Co. v. McKneely, 862 So.2d 530, 533 (¶ 9) (Miss.2003) (citing State Farm Ins. Co. v. Grimes, 722 So.2d 637, 641 (Miss.1998)).
¶ 21. However, the “fact that an insurer’s decision to deny benefits may ultimately turn out to be incorrect does not in and of itself warrant an award of punitive damages if the decision was reached in good faith.” Id. “Where an insurance carrier denies or delays payment of a valid claim, punitive damages will not lie if the carrier has a reasonable cause for such denial or delay.” Id. (citation omitted).
¶22. In order to sustain a bad-faith claim, the burden falls on the claimant to prove that the insurer either lacked a legitimate or arguable basis for denying his claim or that it committed a willful or malicious wrong or acted with gross and reckless disregard for his rights. Id.
¶ 23. Thomas argues that American Casualty had no arguable basis for denying his claim and maliciously denied then delayed his workers’ compensation payments. American Casualty counters that it retained an arguable basis for delaying his workers’ compensation claims, which Thomas affirmed in his deposition.
¶ 24. After the June 4, 2001 accident, American Casualty, through CNA, received information that linked Thomas’s medical treatments to a preexisting condition. Between June 4, 2001, and September 17, 2001, all information obtained by CNA indicated that Thomas had a preexisting condition, which did not require any payments under workers’ compensation. CNA’s adjuster Redferrin spoke with Coke’s Meador on at least two occasions about Thomas’s injury. These conversations indicated Coke believed Thomas’s injury resulted from the 2000 vehicle accident, that medical insurance covered Thomas’s medical bills relating to the June 4 incident, and no workers’ compensation claim existed.
¶25. American Casualty also did not act in a wrong or malicious manner by denying Thomas’s claim. Prior to the petition to controvert, American Casualty found Thomas’s injury resulted from the 2000 vehicle accident, or at least found the source of his injury in dispute. Once Thomas filed a petition to controvert, the petition, by its very nature, placed the claim in further dispute until the Commission resolved the claim.
¶26. The claim remained in dispute until August 23, 2006, when the Commission affirmed the AJ’s order, which ruled *682 in favor of Thomas. The parties did not reach a final agreement on the amount of compensation until the Commission approved a settlement on May 30, 2007. Therefore, American Casualty correctly asserts an arguable claim existed from at least June 4, 2001, to August 23, 2006, when the Commission ruled, if not until May 30, 2007 when the parties finally settled.
¶ 27. Thomas admitted as much in his deposition on March 18, 2013:
Question: All right. And so according to this document that you signed on your oath, there was a legitimate dispute between you and Coke arid the insurance company for the workers’ (sic) comp?
Thomas: Uh-huh, that’s right.
Question: Okay. That was true in May of 2007, right?
Thomas: That’s what the date is, yes.
¶ 28. In the settlement petition to the Commission referred to in Thomas’s deposition, he attested that a legitimate or arguable basis for denying his claim existed, In the petition, Thomas stated:
Petitioner would further show the Commission that there is a bona fide, legitimate dispute between Petitioner and his Attorney, on the one hand, and Employer [Coke] and Carrier [American Casualty], on the other hand as to the nature and extent of disability, loss of wage earning capacity, and/or industrial loss, if any, of Petitioner, as to medical expenses, hospital expenses, and other expenses, extent of injuries, disability, loss of Wage earning capacity, and/or industrial loss of Petitioner which is related to his employment with Employer, and as to the medical and disability status of Petitioner, but that notwithstanding these disputes and acting through and ofi the advice of his Attorney, Petitioner has agreed to settle any and all workers’ compensation claims against Employer and Carrier based on the following payments for indemnity and medical as follows:....
(Emphasis added). Further, the Petition stated:
Petitioner would further show to the Commission that he has consulted with his Attorney as to all matters pertinent to. this claim and that his Attorney has explained to him and Petitioner is aware of the hearing procedures afforded in such cases and the possibility that he might receive an award of a greater amount or lesser amount than agreed herein or an award of other relief and benefits if this matter were adjudicated. Petitioner would further show to the Commission that his Attorney has explained and he understands and is aware of the prospects of recovery and the possibility of medical, hospital, and other expenses respecting this claim, and the possibility of additional benefits and additional forms of relief against Employer and Carrier, and that these expenses and benefits, as well as all other expenses and benefits respecting this claim, will not be the responsibility of Employer and Carrier and/or either of them, and the possibility of additional expenses and benefits and■ additional forms of relief against Employer and Carrier mil hereby be precluded, if this settlement be approved, even should the condition of Petitioner become changed hereafter. ‘
(Emphasis added). The Petition also stated:
Petitioner would further show the Cóm-mission that based on the facts as contended by Petitioner and considering the disputed nature of such facts and disputed medical condition respecting the claim herein, Petitioner and his Attorney *683 feel it would be to Petitioner’s best to terest that he be authorized-and empowered to make such settlement_
Due to'this acknowledgment and the'status of the claim, the Chapmans cannot dispute the existence of an arguable 'claim prior to at least May 30, 2007,
¶ 29. Thomas also failed to show American Casualty committed a willful or malicious wrong or acted with gross and reckless disregard for his rights. Based on Coke’s representations and CNA’s investigations, .American Casualty reasonably believed ■ no workers’, compensation claim existed. “The insurer’s only obligation is to perform a prompt and adequate investigation of the claim and to deal with the claimant in good faith.” McKneely, 862 So.2d at 535 (¶ 15).
¶ 30. American Casualty, through CNA, conducted a reasonable investigation almost immediately after receiving the Coke’s B3 form on the incident. American Casualty acted in good faith by speaking with Coke and reviewing pertinent documents. American Casualty did not receive further notice of á potential ciato until Thomas’s petition to controvert, and the investigation resumed. Therefore, American Casualty did not act in bad faith in its investigation of Thomas’s workers’ compensation claim. ' ’
¶ 31. The Chapmans also failed to show American Casualty conspired with ORA to wrongfully deny Thomas’s claim. “Under Mississippi law, ‘a conspiracy is a combination of-persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.’ ” Gallagher Bassett Servs., Inc. v. Jeffcoat, 887 So.2d 777, 786 (¶ 37) (Miss.2004) (quoting Levens v. Campbell, 733 So.2d 753, 761 (Miss.1999)): It is an essential element that an agreement exists between the coconspira-tors. Id.
¶ 32. No evidence indicates American Casualty communicated with ORA, much dess conspired with ORA. Moreover, the circuit court granted, and the Chap-mans did not contest, summary judgment to ORA. Without any substantive evidence showing American Casualty executed an agreement with ORA, the Chapmans cannot maintain a claim for civil conspiracy.
¶ 33. The Chapmans could not provide any evidence that American Casualty committed any act rising to bad faith or civil conspiracy. Because Brenda’s claims are entirely derivative of the bad-faith and civil-conspiracy claims, we determine her claims failed to defeat summary judgment as well. Based on this insufficiency, the Chapmans failed to show a genuine dispute of material fact existed- to overcome summary judgment.

B. CNA-'

¶ 34. The Chapmans bear a different burden in proving CNÁ, as American Casualty’s claims adjuster, acted in bad faith. “The adjuster does not owe the insured a fiduciary duty nor a duty to act in good faith.”, Bass v. Cal. Life Ins. Co., 581 So.2d. 1087, 1090 (Miss.1991). Rather,
[a]n .adjuster has a, duty to investigate all relevant information and must make a realistic evaluation of a claim. However, an adjuster is, not liable for .simple negligence in adjusting a claim. He can only incur independent liability when his conduct constitutes gross negligence, malice, or reckless, disregard for the rights of the insured.
/¿. (internal citations omitted).
¶ 35. CNA conducted an adequate investigation' of the claim in 2001, and reasonably concluded no workers’ compensation claim existed until receiving notice of Thomas’s- petition, to controvert. CNA remained in contact with Coke from *684 the receipt of the B3 form until the first closure of Thomas’s file. CNA also reviewed all materials provided by Coke with regard to the claim.
¶ 36. In ' addition, CNA promptly reopened Thomas’s file upon receiving notice of Thomas’s petition to controvert. CNA continued investigating throughout the proceedings, and reasonably delayed any payments until the Commission determined the compensability of Thomas’s claim. Thus, any denial of compensation was neither grossly negligent, malicious, nor reckless until the dispute was resolved in favor of Thomas.
¶ 37. The Chapmans do not submit sufficient evidence • that any action by CNA amounted to negligence, much less gross negligence. Without anything more than mere assertions, the Chapmans failed to meet them burden. For similar reasons to American Casualty, the Chapmans’ civil-conspiracy claim and Brenda’s claims fail. Therefore, we find the circuit court did not err in granting summary judgment to CNA.

II. Whether the circuit court erred in granting summary judgment to Coke.

¶ 38. To prove an employer act in bad faith by denying a workers’ compensation claim, a claimant must prove the same elements for bad faith by an insurer. See Southern Farm Bureau Cas. Ins. Co. v. Holland, 469 So.2d 55, 59 (Miss.1984) (allowing bad-faith-refusál claim against insurer as an independent tort outside workers’ compensation remedies); Luckett v. Miss. Wood Inc., 481 So.2d 288, 290 (Miss.1985) (extending application of bad-faith-refusal claim to an employer).
¶ 39. Coke and American Casualty contracted for workers’ compensation coverage. As part of that coverage, American Casualty bore the responsibility to fully investigate each workers’ compensation claim and determine the compensability of a claim. Though the contract required Coke to pay up to $250,000 of a claim, American Casualty had to pay the initial claim, with Coke reimbursing American Casualty up to that amount. Due to this contractual relationship, the Chap-mans could not prove Coke acted in bad faith if American Casualty and CNA did not.
¶40. Even outside of the contract, Coke did not act in bad faith because an arguable claim existed. Coke contested Thomas’s injury as a preexisting condition, with the dispute continuing through contravention. Coke also fulfilled its duty in promptly reporting Thomas’s incident to American Casualty, which then delegated the claim to CNA as its claims adjuster. Further, Coke fully cooperated with CNA in its investigation.
¶ 41. The dissent relies on Mississippi Power & Light Co. v. Cook, 832 So.2d 474 (Miss.2002). Thomas does not cite Cook. Similar to this.case, in Cook, the claimant’s claim was filed, settled, and approved by the Commission. Id. at 478 (¶ 4). However, unlike this case, the court noted that “in the settlement Cook reserved the right to bring a bad[-]faith claim against MP & L.” Id. Here, Thomas settled his claim but did not reservé the right to bring a bad faith claim. I am of the opinion that Cook offers no guidance here.
¶ 42. The Chapmans- offer no substantive evidence to show Coke’s actions amounted to bad faith in its investigation or in its dispute of the claim. The. Chap-mans also provide no support beyond mere allegations of Coke conspiring with ORA to deprive benefits. Because of this lack of evidence, the Chapmans failed in their burden to overcome summary judgment.
*685 ¶ 43. For these reasons, we affirm the grant of summary judgment in favor of American Casualty, CNA, and Coke.
¶ 44. THE JUDGMENT OF THE JASPER COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., AND JAMES, J.; MAXWELL, J., JOINS IN PART. FAIR, J., NOT PARTICIPATING.