**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 99-60149
_____

GEORGE SOBLEY; LINDA SOBLEY,

Plaintiffs-Appellants,

v.

SOUTHERN NATURAL GAS COMPANY, ET AL.,

Defendants,

STATE FARM LLOYDS

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Mississippi

_____

May 5, 2000

Before REYNALDO G. GARZA, HIGGINBOTHAM, and BENAVIDES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

I.    PROCEDURAL AND FACTUAL BACKGROUND

George and Linda Sobley (the Sobleys) built their home in Columbus, Mississippi in 1993

and acquired a homeowner's insurance policy through State Farm Lloyds.  The policy's many

exclusions include one for damage to plumbing caused by electrolysis; other damage resulting

from electrolysis is covered, however, unless excluded by another provision of the policy.  The

policy also excludes coverage for loss to property which is caused by "continuous or repeated

seepage or leakage of water or steam from a . . . plumbing system . . . which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot."

In the fall of 1994, Mr. Sobley noticed that the ground around his pumphouse was saturated with water. He called a plumber who discovered that the pipe running in that area had small holes in it. This pipe was repaired only to have the problem reoccur in pipes located several feet away. Mr. Sobley sent a section of damaged pipe to the manufacturer for analysis which revealed that the holes were caused by electrolysis, i.e. an electrical current running through the pipe. It was subsequently determined that facilities belonging to Southern Natural Gas Company (SONAT) were responsible for the charge on the pipes and the resulting electrolysis.

The Sobleys allege that they first discovered water problems in their house in mid-December, 1994, when they found water seeping from the walls, through the tile, and in their carpet in several locations throughout the house. The Sobleys immediately attempted to clean up the water with rags, mops, and a shop vacuum. Subsequent to these clean-up efforts, Mr. Sobley discovered that water was leaking into the house at each place where the plumbing pipes came through the slab. Mr. Sobley responded by shutting off the main water source and re-routing the damaged plumbing. The re-routing process was completed in May of 1995. During that process, the Sobleys continued to live in the house and turned on the water for brief periods of time to shower. The Sobleys acknowledge that some water leaked into the house each time they turned the water on, but contend that this water never soaked the house as badly as had the initial leakage and that they contained any damage resulting from their daily water use by immediately cleaning up any leakage.

The parties dispute when the Sobleys first contacted State Farm, with the Sobleys insisting

on January of 1995, and with State Farm insisting on March 31, 1995 as the date of first contact. The parties also disagree as to when a State Farm representative first contacted the Sobleys. The first such contact verified by both parties occurred in April of 1995. Pat Dillard, a State Farm claims adjuster, viewed the Sobleys' property on April 21, 1995. Dillard witnessed damage to the Sobleys' carpet and tile. The Sobleys told Dillard that their pipes had been damaged by electrolysis. The parties disagree as to whether Dillard ever mentioned the continuous seepage and leakage exclusion. Dillard did not testify at trial and her notes do not make an explicit reference to any mention by her of that exclusion. State Farm argues that her notes contain an implied reference to that exclusion. Mrs. Sobley testified at trial that Dillard never referred to such an exclusion during their conversation on the day of Dillard's inspection.

On April 25, 1995, State Farm sent the Sobleys a letter denying coverage under their homeowner's policy, the relevant text of which reads: "This letter will follow-up my inspection of your loss on April 21, 1995, and discussion regarding cause of loss being electrolysis. I have confirmed this cause of loss is excluded on page 10 of your policy, Exclusion 1.h." The letter stated no other reasons for State Farm's denial of coverage.

The Sobleys filed suit against SONAT in October of 1996 and amended their complaint to add State Farm as a defendant in 1997. As amended, the Sobleys' complaint alleged bad faith denial of coverage against State Farm and sought punitive and extra-contractual damages as well as actual damages to cover the costs of repair for their home. State Farm entered a cross-claim against SONAT which sought indemnification from SONAT for direct damages as well as attorneys' fees and costs should there be a verdict for the Sobleys. The Sobleys entered into a settlement agreement with SONAT before trial under which SONAT would be dismissed with

prejudice from the litigation in exchange for payment of $72,500 in damages. The magistrate judge entered an order over State Farm's objection dismissing SONAT and extinguishing State Farm's cross claims against it. Pursuant to the settlement agreement, the Sobleys were barred from seeking contract damages from State Farm but their extra-contractual and punitive damages claims were allowed to go forward.

The parties consented to have their case tried before a magistrate judge. The Sobleys contend that the magistrate judge bifurcated the proceedings, trying the issue of coverage before a jury beginning on January 26, 1999 and deferring the issues relating to punitive and extra-contractual damages to a later phase. According to the Sobleys, the court instructed them to limit their proof to the sole issue of coverage under the policy and that if coverage was found they could then proceed with evidence to support their claim for punitive damages. According to State Farm, the Sobleys were allowed to put on evidence during the trial relating to State Farm's conduct both before and after its denial of coverage. Such evidence would presumably be relevant to their bad faith claims given that the issue of coverage could be determined from the comparing the damage to the policy language itself.

The Sobleys told the court of their concern that they had not been granted an opportunity to fully argue their bad faith claim, particularly as to whether State Farm had an arguable basis for denying coverage. The magistrate judge granted a recess, noting that he wanted the Sobleys' argument on arguable basis to be heard. The Sobleys' attorney offered one case and argued that it was inappropriate to consider the arguable basis issue before the contract claim was determined and that the arguable basis question should go to the jury. The Sobleys did not clarify what other evidence or argument they had to offer on their bad faith claims.

-4-

The magistrate judge ruled from the bench that the Sobleys had created a jury issue as to coverage but that he was "jumping over to make a determination of whether or not the jury, based upon the facts that have been before the Court and the facts that the Court is aware of . . . is it sufficient to put forth a bad faith claim; was there an arguable basis for denial," and ruled that State Farm did have such an arguable basis. The magistrate judge issued a directed verdict in favor of State Farm. Final judgment was entered on January 28, 1999 and the Sobleys timely appealed.

## II. STANDARD OF REVIEW

This case arises under diversity jurisdiction and concerns issues of federal procedure and Mississippi state insurance law. As this case is an appeal of a directed verdict in favor of State Farm, the facts must be viewed in the light most favorable to the Sobleys. *See Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1042 (5th Cir. 1998). We review *de novo* the trial court's decision to grant judgment as a matter of law applying the same standards the trial court used, and will affirm unless the material evidence is such that reasonable persons could find for the Sobleys on their punitive damages claim. *See Boggan v. Data Sys. Networks Corp.*, 969 F.2d 149, 152 (5th Cir. 1992); *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 804 (5th Cir. 1997). Under Mississippi law, a finding of coverage is a necessary predicate to bringing a punitive damages claim. *See McCain v. Northwestern Nat'l Life Ins. Co.*, 484 So.2d 1001, 1002 (Miss. 1986). Once coverage is established, the issue of punitive damages should be submitted to the jury if the trial court determines that there are jury issues with regard to whether: (1) the insurer lacked an arguable or legitimate basis for denying the claims, and (2) the insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights. *State Farm*

*Mutual Automobile Ins. Co. v. Grimes*, 722 So.2d 637, 641 (5th Cir. 1998).

## III. DISCUSSION

The Sobleys contend that the trial judge erred in deciding their bad faith claim by considering justifications for denial of coverage other than those contained in State Farm's denial letter. Under Mississippi law, an insurer may rely on any exclusion in the policy to show that no coverage existed, whether or not that exclusion was the stated basis for denial. However, once coverage is established, a court should evaluate whether there was an arguable basis for denial of coverage based solely on the reasons for denial of coverage given to the insured by the insurance company.[1] *See Eichenseer v. Reserve Life Ins. Co.,* 682 F.Supp 1355, 1372 (N.D. Miss. 1988), aff'd 881 F.2d 1355 (5th Cir. 1989), cert. granted and vacated on other grounds, 499 U.S. 914 (1991), on remand and aff'd 934 F.2d 1377; *Bankers Life & Cas. Co. v. Crenshaw*, 483 So.2d 254, 273 (Miss. 1985) ("the issue is not the defense which [the insurer] finally settled upon to defend the suit, but the reason it gave [the insured] for denying the claim"). We do not read the Mississippi Supreme Court's decision in *Grimes*, 722 So.2d at 637, as altering this point of law. The *Grimes* opinion does not address the issue whether a court may consider reasons other than those offered in evaluating a bad faith claim, nor does it mention the *Crenshaw* or *Eichenseer* opinions.[2]

---

[1] As noted, the trial court determined that there was a jury issue as to coverage and this finding has not been appealed.

[2] We must separate two issues: first, which reasons for denial of coverage may be considered in our arguable basis analysis, and second, which facts may be considered in evaluating whether those reasons are supported well enough to provide an arguable basis. In *Grimes*, the insurer denied coverage because of "evidence" that the insured had burgled his own car. The *Grimes* opinion did not address whether an arguable basis may be found in reasons for denial of coverage which were not given to the insured. The *Grimes* court only had to determine

We therefore hold that under Mississippi law, the trial court should determine whether there is a jury question regarding arguable basis solely with respect to the reasons State Farm gave to the Sobleys for denying the claim. The letter which State Farm sent to the Sobleys to deny coverage reads: "This letter will follow-up on my inspection of your loss on April 21, 1995, and discussion regarding cause of loss being electrolysis. I have confirmed this cause of loss is excluded on page 10 of your policy, Exclusion 1.h." No other reasons were given for State Farm's denial of coverage in the letter. On appeal, State Farm does not argue that the electrolysis exclusion applies to the Sobleys' water damage to the carpet and tile or that it provides an arguable basis for its denial of coverage. Instead, State Farm argues, and the trial court found, that the water exclusion provides an arguable basis for its denial of coverage.[3] If the water exclusion was not given to the Sobleys as a reason for denying coverage, then it was an error, under Mississippi law, for the trial court to consider that reason as part of its arguable basis analysis. We note, without deciding the issue, that there appears to be a factual dispute as to whether this exclusion was ever discussed with the Sobleys as a basis for denying coverage, and yet all inferences at this stage must be drawn in favor of the Sobleys. At trial, Mrs. Sobley testified that she and Dillard never discussed the water exclusion and Mrs. Sobley was the only

___

whether the reason given for the denial of coverage was supported by enough facts to provide an arguable basis for denial of coverage. The *Grimes* court held that "In determining whether State Farm had an arguable basis for denying the claim in the present case, the Court should consider the facts that were available to State Farm at the time the claim was denied." This analysis says nothing about which *reasons* may be considered in evaluating an arguable basis; it only goes to which *facts* may be considered in determining whether the reason given is adequately supported so as to provide an arguable basis.

[3] The "water exclusion" refers to the "continuous seepage and leakage" exclusion of the policy.

witness at trial with personal knowledge of this issue. State Farm's sole evidence on this issue comes from their manager's testimony regarding his somewhat strained interpretation of Dillard's log notes. That manager deciphered the notation "water leaks seem to be spreading," as proof that Dillard discussed the water exclusion with Mrs. Sobley. Given that the trial judge did not make a factual finding as to whether the water exclusion was presented to the Sobleys as a reason for denying coverage, this court cannot tell whether it was an error under Mississippi law to consider whether that exclusion provided State Farm with an arguable basis for denying coverage.

We therefore reverse the trial court's grant of judgment as a matter of law on the arguable basis issue and remand for further proceedings consistent with this opinion. On remand, the trial court should reconsider whether there is a genuine issue of material fact regarding the arguable basis issue solely with reference to the reasons that State Farm actually gave to the Sobleys. If a jury question on arguable basis is found, the trial court must consider whether there is a jury question on the second prong of the punitive damage analysis, namely, whether State Farm "committed a wilful or malicious wrong or acted with gross and reckless disregard for the insured's rights." *Grimes*, 722 So.2d at 641. The record does not reflect that this issue was addressed by the trial court. If there is a jury question regarding wilful conduct or reckless disregard, then the trial court is instructed to submit the coverage issue to the jury, and if coverage is found, to instruct the jury that in determining whether State Farm had an arguable basis to deny coverage, it may not consider reasons not given to the insured nor evidence discovered after litigation began, but may only consider the facts known to State Farm at the time of denial.

IV.   CONCLUSION

-8-

We REVERSE the dismissal of the Sobleys' extra-contractual and punitive damages claims and REMAND for further proceedings consistent with this opinion.