IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 01-60541

---

GEORGE SOBLEY; LINDA SOBLEY,

Plaintiffs-Appellees,

versus

SOUTHERN NATURAL GAS COMPANY; ET AL.,

Defendants,

STATE FARM LLOYDS,

Defendant-Appellant.

---

Appeal from the United States District Court
For the Northern District of Mississippi

---

August 13, 2002

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

State Farm Lloyds appeals from a judgment of $1.25 million in punitive damages entered against it on a verdict by a Mississippi jury on the bad faith insurance claim of plaintiffs George and Linda Sobley. We conclude that the punitive damages issue should not have been submitted to the jury on remand from this court in the appeal from the first trial in this case, *Sobley v. Southern*

*Natural Gas Co. (Sobley I).*[1]  We therefore REVERSE and RENDER in favor of State Farm.

I.

Relying on our description of the factual background in *Sobley I*, we recapitulate.

The Sobleys built their house in Columbus, Mississippi in 1993 and purchased homeowner's insurance from State Farm Lloyds ("State Farm").  In the fall of 1994, George Sobley noticed that the ground around his pumphouse was saturated with water.  His plumber found small holes in the pipe running in that area.  It was repaired only to reoccur in pipes located several feet away.  George Sobley sent a section of damaged pipe to the manufacturer for analysis, learning that the holes were caused by electrolysis, an electrical current running through the pipe.  It was later determined that facilities belonging to Southern Natural Gas Company (SONAT) were responsible for the charge on the pipes and the resulting electrolysis.

When the Sobleys first discovered water leaking into their house is disputed.  State Farm contends that George Sobley testified in a deposition early in this case that water entered his house in mid-1994.  The Sobleys allege that they first discovered water problems in their house one morning in mid-December 1994, when they found water seeping from the walls, through the tile, and

---

[1]  210 F.3d 561 (5th Cir. 2000).

2

in their carpet in several locations throughout the house.  The Sobleys immediately attempted to clean up the water with rags, mops, and a shop vacuum.  George Sobley found that water was leaking into the house at each place where the plumbing pipes came through the slab.  He then shut off the main water source and re-routed the damaged plumbing, completing the task in May 1995.

During that process, the Sobleys continued to live in the house and turned on the water for brief periods of time to shower.  The Sobleys acknowledge that some water leaked into the house each time they turned the water on but contend that this water never soaked the house as badly as had the initial leakage and that they contained any damage resulting from their daily water use by immediately cleaning up any leakage.

The parties also dispute when the Sobleys first contacted State Farm, with the Sobleys insisting on January 1995 and State Farm insisting on March 31, 1995 as the date of first contact.  It is undisputed that Pat Dillard, a State Farm claims adjuster, first spoke with Linda Sobley in April 1995 and arranged to visit the house on April 21, 1995.

Dillard inspected the Sobleys' house on April 21, where, according to her own notes, she witnessed damage to the Sobleys' carpet and tile which she photographed.  Linda Sobley told Dillard that their pipes had been damaged by electrolysis.  The parties disagree as to whether Dillard ever mentioned the policy's water exclusion to the Sobleys at any time in April 1995.  It is

3

undisputed that an April 25, 1995 letter from Dillard to the Sobleys explicitly cited the electrolysis exclusion in section 1.h of the policy as the basis for denying coverage for their claim.[2] That letter reads:

> This letter will follow-up my inspection of your loss on April 21, 1995, and discussion regarding cause of loss being electrolysis. I have confirmed this cause of loss is excluded on page 10 of your policy, Exclusion 1.h.
> Should you find anything to the contrary or should you have any further questions, or if I can be of further assistance, please do not hesitate to call me. My number is listed below. Based on the above, we are regretfully unable to provide any coverage for this loss.

Attached to the letter was a copy of page 10 of the Sobleys' homeowner's policy. It is also undisputed that the Sobleys did not contact State Farm again after receiving this letter until some time in 1997, when Linda Sobley contacted State Farm to ask for copies of the pictures which Dillard took at the house on April 21, 1995.

## II.

The Sobleys filed suit against SONAT in Mississippi state court in October 1996 for negligence in causing damage through electrolysis to their house. In June 1997, after SONAT had removed

---

[2] As we explained in *Sobley I*, "[t]he policy's many exclusions include one for damage to plumbing caused by electrolysis; other damage resulting from electrolysis is covered, however, unless excluded by another provision of the policy," and "[t]he policy also excludes coverage for loss to property which is caused by 'continuous or repeated seepage or leakage of water or steam from a ... plumbing system ... which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot,'" which has been referred to as the "water exclusion." 210 F.3d at 562, 565 n.3. For unrelated medical reasons, Dillard did not testify at any point in this litigation.

4

the case, the Sobleys amended their complaint to add State Farm as a defendant, seeking coverage under their homeowner's policy for the water damage to their house from their leaking water pipes.[3] State Farm answered in July 1997, raising numerous defenses and policy exclusions to coverage as affirmative defenses. State Farm also cross-claimed against SONAT for damages in the event that State Farm was found to have insured losses caused by SONAT's negligence. All parties consented to proceed before a magistrate judge.

In March 1998, the Sobleys amended their complaint to add a claim for punitive damages against State Farm based on bad faith denial of insurance coverage. After cross-motions for summary judgment were denied, the case proceeded to a pre-trial conference in early January 1999.

At the pre-trial conference, the Sobleys reached a settlement with SONAT. SONAT moved to dismiss the Sobleys' claim and State Farm's cross-claim against it, representing that, "[a]s a part of the Settlement Agreement, Plaintiffs will not attempt to recover property damage claims against State Farm Lloyds, but will litigate only whether Plaintiffs are entitled to extra contractual damages, attorney's fees, court costs and punitive damages" and so the settlement "will render moot the Cross-claim of State Farm Lloyds against [SONAT]." The trial court granted the motion, concluding

---

[3] The Sobleys originally sued State Farm Fire and Casualty Company, not State Farm Lloyds, in May 1997.

that, pursuant to the settlement agreement, "all of Plaintiffs' claims for property damages are satisfied and extinguished" and the Sobleys' claim and State Farm's cross-claim against SONAT "are moot as a result of this settlement."

State Farm took the position, however, that it did not waive any claims, cross-claims or positions as a result of the agreement between the Sobleys and SONAT. State Farm also moved to dismiss the Sobleys' claim for extra-contractual or punitive damages against it on the ground that there was no subject matter jurisdiction over the claim where the order of dismissal provided that the settlement agreement had extinguished all of the Sobleys' claims for property damages under their homeowner's policy, but this motion was denied.[4]

The case proceeded to trial before a jury in late January 1999. At the first trial, the trial court first allowed the Sobleys to present evidence only on the issue of coverage for their claim under their policy and deferred the issues relating to punitive or extra-contractual damages to a later phase of the

_____

[4] State Farm does not appeal the trial court's refusal to dismiss the Sobleys' bad faith claim against State Farm based on the SONAT settlement. Likewise, State Farm does not appeal the trial court's decision at the second trial, which it made with State Farm's but not the Sobleys' encouragement, to submit for the jury's determination the question of the amount of contractual damages to which the Sobleys were entitled for their property damage claims under their homeowner's policy, despite the fact that the trial court intended to enter judgment only on any punitive damages awarded to the Sobleys, a fact the trial court did not share with the jury. Finally, State Farm does not appeal the trial court's decision at the second trial to keep the fact of and information about the SONAT settlement from the jury or its limiting instruction at trial that the jurors were "not to be concerned with [the other lawsuit with SONAT] and what happened in that regard," which "is a different matter totally from this case."

6

trial. Following the Sobleys' case-in-chief, however, the trial court "ruled from the bench that the Sobleys had created a jury issue as to coverage but that he was 'jumping over to make a determination of whether or not the jury, based upon the facts that have been before the Court and the facts that the Court is aware of ... is it sufficient to put forth a bad faith claim; was there an arguable basis for denial,' and ruled that State Farm did have such an arguable basis."[5] The trial court therefore issued a directed verdict in favor of State Farm and entered a judgment dismissing the Sobleys' case against State Farm.

On appeal, this court reversed and remanded. We held that, "[u]nder Mississippi law, a finding of coverage is a necessary predicate to bringing a punitive damages claim," and, "[o]nce coverage is established, the issue of punitive damages should be submitted to the jury if the trial court determines that there are jury issues with regard to whether: (1) the insurer lacked an arguable or legitimate basis for denying the claims, and (2) the insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights."[6] We noted that, in the instant case, "the trial court determined that there was a jury issue as to coverage and this finding has not been appealed."[7]

---

[5] *Sobley I*, 210 F.3d at 563.

[6] *Id.* at 564.

[7] *Id.* at 564 n.1

7

We further held that, "once coverage is established, a court should evaluate whether there was an arguable basis for denial of coverage based solely on the reasons for denial of coverage given to the insured by the insurance company," such that, in this case, "the trial court should determine whether there is a jury question regarding arguable basis solely with respect to the reasons State Farm gave to the Sobleys for denying the claim."[8]

We reversed because, in determining that the water exclusion provided an arguable basis for denying the Sobleys' claim, "the trial judge did not make a factual finding as to whether the water exclusion was presented to the Sobleys as a reason for denying coverage," and so "this court cannot tell whether it was an error under Mississippi law to consider whether that exclusion provided State Farm with an arguable basis for denying coverage."[9] As such, we held that, "[o]n remand, the trial court should reconsider whether there is a genuine issue of material fact regarding the arguable basis issue solely with reference to the reasons that State Farm actually gave to the Sobleys."[10]

We further instructed that, "[i]f a jury question on arguable basis is found, the trial court must consider whether there is a jury question on the second prong of the punitive damage analysis,

---

[8] *Id.* at 564.

[9] *Id.* at 565.

[10] *Id.*

8

namely, whether State Farm 'committed a wilful or malicious wrong or acted with gross and reckless disregard for the insured's rights.'"[11]  Thereafter, "[i]f there is a jury question regarding wilful conduct or reckless disregard, then the trial court is instructed to submit the coverage issue to the jury, and if coverage is found, to instruct the jury that in determining whether State Farm had an arguable basis to deny coverage, it may not consider reasons not given to the insured nor evidence discovered after litigation began, but may only consider the facts known to State Farm at the time of denial."[12]

On remand, the trial court considered cross-motions for judgment as a matter of law from the Sobleys and State Farm and denied them entirely, specifically noting that "there is a genuine issue of material fact as to whether the water exclusion was presented to the Sobleys as a reason for denying coverage and whether that exclusion provided States Farm with an arguable basis for denying coverage."  The trial court later clarified that State Farm's motion was "denied in all respects."

The case proceeded to trial in January 2001.  Following the trial court's denial of motions for judgment as a matter of law by State Farm at the close of the Sobleys' case-in-chief and the close of the evidence, the trial court, through special interrogatories,

---

[11]  *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Grimes*, 722 So.2d 637, 641 (Miss. 1998) (*en banc*)).

[12]  *Id.*

submitted to the jury the issues of coverage, arguable basis, and whether State Farm committed a wilful or malicious wrong or acted with gross and reckless disregard for the Sobleys' rights, but did not submit at that time the question of the appropriate amount of any contractual damages or punitive damages. The jury returned findings in favor of the Sobleys on each of the interrogatories.

After the parties stipulated to the amount of State Farm's net worth and were allowed to present additional closing arguments on the issue of the appropriate amount of contractual damages and punitive damages, the trial court submitted to the jury a verdict form asking the jury to find the appropriate amount of contractual damages and any punitive damages to be awarded to the Sobleys. The jury returned a verdict for $39,683 in contractual damages and $1.25 million in punitive damages.

The trial court entered judgment on the award of the punitive damages only and later denied State Farm's post-trial motion for judgment as a matter of law or, in the alternative, new trial or remittitur. The Sobleys also moved to recover from State Farm their attorneys' fees and expenses, which the trial court awarded in the amount of $349,240.33.

State Farm appeals from the trial court's judgment and the order awarding the Sobleys their attorneys' fees and expenses.

III.

10

State Farm raises several challenges to the trial court's decision to submit to the jury the issue of punitive damages for bad faith denial of the Sobleys' insurance claim.

A.

State Farm first argues that the trial court violated our remand instructions in *Sobley I* by failing to consider on cross-motions for judgment as a matter of law, based solely on the record from the first trial, whether there was sufficient evidence to create a jury issue on the issue of arguable basis and, if so, on the issue of whether State Farm committed a wilful or malicious wrong or acted with gross and reckless disregard for the insured's rights. According to State Farm, the trial court denied the cross-motions and proceeded to trial, thereby abdicating its responsibilities under our remand instructions because an appropriate review of the record as it then existed would have resulted in the conclusion that no jury question as to whether State Farm committed a wilful or malicious wrong or acted with gross and reckless disregard for the Sobleys' rights was presented by the Sobleys' bad faith claim.

We review *de novo* whether the trial court faithfully and accurately applied our instructions on remand.[13] Here, the trial court considered the cross-motions on all issues on the Sobleys' bad faith claim and denied the motions in all respects, albeit

_____

[13] *Hopwood v. Tex.*, 236 F.3d 256, 263 (5th Cir. 2000), *cert. denied*, 533 U.S. 929 (2001).

11

without specific reasons as to the issue of whether State Farm committed a wilful or malicious wrong or acted with gross and reckless disregard for the Sobleys' rights.

These rulings satisfy the requirements of our remand instructions.[14] We are without jurisdiction to conduct further inquiry into the correctness of the trial court's denial of State Farm's motion, based on our well-settled rule that "such interlocutory orders are not to be reviewed where final judgment adverse to the movant is rendered on the basis of a subsequent full trial on the merits."[15]

B.

State Farm also argues that the trial court erred in allowing the Sobleys to proceed to trial on remand on an amended bad faith claim based on State Farm's post-denial and litigation conduct, which State Farm alleges was an expanded claim from the bad faith count alleged in the last amended complaint and pre-trial order for the first trial. State Farm asserts that the only bad faith claim properly before the trial court was a claim based solely on State Farm's actions in April 1995 in investigating and denying the

---

[14] *See Sobley I*, 210 F.3d at 565 ("On remand, the trial court should reconsider whether there is a genuine issue of material fact regarding the arguable basis issue solely with reference to the reasons that State Farm actually gave to the Sobleys. If a jury question on arguable basis is found, the trial court must consider whether there is a jury question on the second prong of the punitive damage analysis, namely, whether State Farm 'committed a wilful or malicious wrong or acted with gross and reckless disregard for the insured's rights.'" (quoting *Grimes*, 722 So.2d at 641)).

[15] *Johnson v. Sawyer*, 120 F.3d 1307, 1331 (5th Cir. 1997); *accord Brown v. Slenker*, 220 F.3d 411, 421 n.9 (5th Cir. 2000).

12

Sobleys' claim for water damage to their carpet and tile and re-routing their damaged piping. As such, State Farm contends that the trial court violated this court's mandate to reconsider whether to grant judgment as a matter of law on the Sobleys' bad faith claim from the first trial and, further, that allowing the Sobleys to add this new, expansive claim on the eve of the second trial violated the Federal Rules and State Farm's due process rights.

Under the "mandate rule," the trial court was without power to do anything contrary to the letter or spirit of our mandate construed in the light of our opinion in *Sobley I*, taking into account the circumstances that opinion embraces.[16] And after a pre-trial order is entered, "it controls the scope and course of the trial," and, "[i]f a claim or issue is omitted from the order, it is waived, even if it appeared in the complaint."[17]

These rules notwithstanding, a complete review of the record and controlling Mississippi law does not support State Farm's oft-repeated complaint that a bad faith claim based on its post-denial conduct was sprung on it at the last minute following remand. State Farm relies almost exclusively on the statement of the Sobleys' bad faith claim in the last amended complaint:

> State Farm failed to adequately investigate the Plaintiffs' claim, and subsequently denied coverage without an arguable basis for said denial. State Farm's

---

[16] *See Tollett v. City of Kemah*, 285 F.3d 257, 364 (5th Cir. 2002).

[17] *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 604 (5th Cir. 2000).

13

conduct in inadequately investigating the Plaintiffs' claim and subsequently denying coverage without an arguable basis amounts to reckless disregard for the rights of the Plaintiffs, and the Plaintiffs are therefore entitled to an award of punitive damages.

and the pre-trial order for the first trial:

9. The contested issues of fact are as follows:
    a. By Plaintiffs:
....
    (3) Whether State Farm properly and adequately investigated the Plaintiffs' claim.
    (4) Whether State Farm had an arguable basis for denial of Plaintiffs' claim at the time of initial denial on the basis of the electrolysis exclusion of the policy.
    (5) Whether State Farm's actions in denying the claim rise to the level of willful, wanton misconduct or reckless disregard for the rights of the Plaintiffs.
....
10. The contested issues of law are as follows:
    a. By Plaintiffs:
....
    3. Whether State Farm's conduct and actions in denying the claim of the Plaintiffs entitles the Plaintiffs to recovery of attorney's fees and/or punitive damages.

In the pre-trial order for the second trial, the Sobleys stated:

9. The contested issues of fact are as follows:
    a. By Plaintiffs:
....
    6. Whether State Farm's actions or inactions both before and after its denial of coverage and/or subsequent conduct rises to the level of willful, wanton misconduct or reckless disregard for the rights of the Sobleys.

At first blush, the claim in the second pre-trial order appears to be a more expansive claim than that in the Sobleys' last amended complaint, if not the statement of the claim in the first pre-trial order. A review of the record and of our opinion in *Sobley I* makes clear, however, that the Sobleys' bad faith claim

14

encompassed State Farm's post-denial conduct from the time the Sobleys were allowed to amend their complaint to add the bad faith claim.

In response to State Farm's opposition to the Sobleys' motion to amend to add this claim, the Sobleys stated that "it has become apparent that State Farm's original and continuous denial of coverage despite its knowledge of the facts and circumstances surrounding this matter constitute bad faith, and that the Plaintiffs are entitled to punitive damages." The Sobleys went on to assert that they "are continuing to suffer damages because of State Farm's continuous denial of coverage, even though State Farm is aware of facts which warrant coverage," which "is precisely the type of conduct for which punitive damages are prescribed." After receiving this response, the trial court allowed the Sobleys to amend to add the bad faith claim for punitive damages.

Thereafter, in response to State Farm's motion for summary judgment prior to the first trial, the Sobleys argued that "State Farm's conduct in adjusting the Plaintiffs' claim amounts to bad faith and a reckless disregard for the rights of the Plaintiffs" and that "State Farm's duty to re-evaluate claims does not end merely because a lawsuit has been filed," such that "an example of State Farm's continued bad faith predisposition and unfounded argumentative posture regarding the Plaintiffs' claims" could be found in State Farm's responses to the Sobleys' request for admissions. The Sobleys contended that, "not only did State Farm

15

deny coverage based solely on the electrolysis exclusion despite the fact that Pat Dillard's inspection revealed water damage to the carpet and the Mexican tile and the rerouting of the plumbing system, but State Farm continues to deny coverage for the carpet damage and tile damage based on an exclusion of coverage for 'deterioration, corrosion, rust, mold, or wet or dry rot' despite the fact that Dillard's investigation revealed no such damages." Thus, the Sobleys asserted that "this conduct on the part of State Farm clearly entitles the Sobleys to have a jury make the determination regarding the unreasonableness of State Farm's denial of coverage, and its reckless disregard for the rights of its insured."

At the first trial, the Sobleys' counsel began his opening statement by asserting that "[t]he proof will show in this case that State Farm Lloyds never intended to provide coverage for the damages that the Sobleys had in this case from the very beginning until the present day." Counsel went on to argue that, "as we sit here today, they still deny coverage for that carpet and tile."

This review of the record confirms that a bad faith claim based on State Farm's post-denial and litigation conduct was a part of this case from the time the Sobleys moved to add a punitive damages claim through the first trial, regardless of how inartfully the last amended complaint or the first trial's pre-trial order were drafted. Indeed, in *Sobley I*, we observed:

> According to State Farm, the Sobleys were allowed to put on evidence during the trial relating to State Farm's conduct both before and after its denial of coverage. Such evidence would presumably be relevant to their bad faith claims given that the issue of coverage could be determined from the comparing the damage to the policy language itself.[18]

Consistent with this observation, evidence of post-denial conduct by the insurer is relevant under Mississippi law to establish a claim for bad faith denial of insurance coverage, as State Farm's counsel admitted at oral argument.[19]

State Farm's protestations that the Sobleys raised a radically different theory for the first time in January 2001, just before the start of the second trial, are belied by the record. Accordingly, bereft of this faulty factual premise, there is no merit in State Farm's point of error that the Sobleys' new claim was raised too late and without compliance with the requirements of Federal Rule of Civil Procedure 15 and that the trial court's ruling allowing this "new" theory of bad faith to be added without a continuance for State Farm to prepare or conduct additional

---

[18]   210 F.3d at 563.

[19]   *Gregory v. Cont'l Ins. Co.*, 575 So.2d 534, 541-42 (Miss. 1990) (*en banc*); *accord Eichenseer v. Reserve Life Ins. Co.*, 682 F. Supp. 1355, 1372 (N.D. Miss. 1988) ("An insurance company is under a continuing duty to reevaluate its position when it chooses to deny a claim.  This is because an insurer may be subject to punitive damages for initially denying a claim without an arguable reason, even if it later decides to pay."), *aff'd*, 881 F.2d 1355 (5th Cir. 1989), *vacated on other grounds*, 499 U.S. 914 (1991); *cf. Grimes*, 722 So.2d at 644 (insurer argued that the jurors must be allowed to consider post-denial expert testimony on which it relied in deciding whether its investigation was reasonable for purposes of deciding whether State Farm acted in bad faith, but not in deciding the predicate issue of whether State Farm had an arguable basis to deny its insured's claim).

17

discovery constitutes an abuse of discretion and a denial of due process to State Farm.

C.

State Farm also contends that the trial court erred in sending the punitive damages issue to the jury based on the analysis prescribed in *Sobley I*.  In particular, State Farm asserts that there was insufficient evidence to establish a jury issue with regard to whether State Farm committed a wilful or malicious wrong or acted with gross and reckless disregard for the Sobleys' rights.[20]

We review the trial court's decision to submit this issue to the jury through the vehicle of the court's denial of State Farm's motion for judgment as a matter of law.[21]  As such, we review the trial court's decision *de novo*, applying the familiar standard

---

[20]    State Farm properly moved for judgment as a matter of law on this ground following the Sobleys' case-in-chief, at the close of the evidence, and in its post-trial motion for judgment as a matter of law.  State Farm, however, does not appeal the trial court's conclusion that there was sufficient evidence to create a jury issue with regard to the predicate coverage or arguable basis issues or, correspondingly, in denying State Farm's post-trial motion for judgment as a matter of law, that there was sufficient evidence to support the jury's findings in favor of the Sobleys on those issues.  State Farm also does not appeal from the trial court's denial of its post-trial motion for judgment as a matter of law on the ground that there was sufficient evidence to support the jury's findings in favor of the Sobleys on the issue of whether State Farm committed a wilful or malicious wrong or acted with gross and reckless disregard for the Sobleys' rights.

[21]    *See Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002); *accord Burkhart Grob Luft und Raumfahrt GmbH & Co. KG v. E-Systems, Inc.*, 257 F.3d 461, 467 (5th Cir. 2001) ("Whether Grob produced sufficient evidence to present the question of its lost profits to the jury is a question we review *de novo*.").

18

first articulated in *Boeing Co. v. Shipman*:[22] for the Sobleys "to create a jury question, there must be a dispute in the substantial evidence, that is, evidence which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions," such that "a mere scintilla of evidence is insufficient to present a question for the jury" and, "[e]ven if the evidence is more than a scintilla, *Boeing* assumes that some evidence may exist to support a position which is yet so overwhelmed by contrary proof as to yield to a directed verdict."[23] In applying this standard "[i]n determining whether there is a jury question, the court should consider all the evidence presented at trial in the light most favorable to the non-moving party."[24]

Although we engage in a *de novo* review, it will be helpful to review first the trial court's rulings denying State Farm's motions on this issue. To recap, in *Sobley I*, we instructed the trial

---

[22] 411 F.2d 365, 374-75 (5th Cir. 1969) (*en banc*), *overruled on other grounds*, *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997) (*en banc*). *See generally Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 336 (5th Cir.) ("Whether the evidence presented at trial is sufficient to create an issue of fact for the jury or will permit the court to enter judgment as a matter of law is governed by federal rather than state law."), *amended on denial of reh'g on other grounds*, 274 F.3d 881 (5th Cir. 2001).

[23] *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167 (5th Cir. 1999); *accord Anthony*, 284 F.3d at 583 ("In order to survive a Rule 50 motion and present a question for the jury, the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of their claim. In other words, the evidence must be sufficient so that a jury will not ultimately rest its verdict on mere speculation and conjecture." (citation omitted)).

[24] *Anthony*, 284 F.3d at 583.

19

court on remand that, "[i]f a jury question on arguable basis is found, the trial court must consider whether there is a jury question on the second prong of the punitive damage analysis, namely, whether State Farm 'committed a wilful or malicious wrong or acted with gross and reckless disregard for the insured's rights.'"[25] The trial court denied State Farm's motion at the close of the Sobleys' case-in-chief, stating:

> And, again, as far as the bad faith and the questions about Mr. Sobley's testimony in that regard, that's again, a who do we want to believe in this? The unfortunate — I guess you could say unfortunate for State Farm, post litigation conduct is admissible under Mississippi law to determine these issues. At this point, I'm going to allow it to go forward and I will deny the motion as it stands at this time.

In denying State Farm's renewed motion for judgment as a matter of law at the close of the evidence, the trial court reasoned:

> Now, it seems to me that [there's] a logical conclusion you can make, if they can say, State Farm — [the jurors] could reach a conclusion that State Farm made a mistake and instead of acknowledging the mistake, compounded it by piling on other matters. And I have faith in that as the whole thrust of how they presented those things through the answer and what y'all have done is post litigation conduct.

Finally, in denying State Farm's post-trial motion for judgment as a matter of law, the trial court observed:

> The defendant also asserts that the court erred by submitting the issue of punitive damages to the jury. Clearly, the law of Mississippi does not allow the imposition of punitive damages for mere negligence or clerical mistake. This case, however, rises above simple negligence or clerical mistake. The jury properly found

---

[25]  210 F.3d at 565 (quoting *Grimes*, 722 So.2d at 641).

20

based on the evidence that the defendant denied the Sobleys' claim without an arguable reason. The court finds that the reasonableness of defendant's actions was properly submitted to the jury and the jury found the intentional denial necessary for an award of punitive damages.[26]

The Sobleys' proof at trial as to State Farm's alleged gross and reckless disregard focused on several aspects of State Farm's conduct in investigating and initially and continually denying the Sobleys' claim for carpet and tile damage and re-routing expenses without an adequate investigation.[27] The Sobleys primarily argued that their evidence showed that State Farm, after denying the Sobleys' claim in Dillard's April 25, 1995 letter citing only the electrolysis exclusion and later being sued by the Sobleys in June 1997, knew that the electrolysis exclusion did not bar coverage for the Sobleys' claim for carpet and tile damage and re-routing expenses but, instead of admitting the mistake and paying the claim, raised and pressed, without adequate investigation, several other defenses and exclusions to deny coverage through the first trial in January 1999.

---

[26] (citations omitted).

[27] The Sobleys have conceded, however, as they must, that from the date of the settlement with SONAT, State Farm had no further obligation to pay any claim under the Sobleys' homeowner's policy, since the Sobleys agreed, pursuant to their settlement agreement with SONAT, that they would not attempt to recover any contractual property damages from State Farm. As such, we review the evidence only of State Farm's conduct in investigating and denying the Sobleys' claim through the date of the settlement in January 1999, and not its post-denial or litigation conduct after that time, including its arguments and actions at the first and second trial.

To this end, the Sobleys presented evidence that, after being sued by the Sobleys in 1997, State Farm continued to stand by the electrolysis exclusion as a basis for denying coverage of the Sobleys' claim. The Sobleys' evidence also demonstrated that State Farm raised the water exclusion as a basis for denying their claim without sending a claims adjustor to inspect the carpet and tile damage for almost four years after Dillard's initial visit on April 21, 1995.[28] The Sobleys presented evidence that Dillard's April 21, 1995 inspection, according to her own contemporaneous notes, revealed nothing which would fit within the Sobleys' proffered definition of "deterioration" to the carpet or tile and that Linda Sobley's own observations and the observations of a carpet specialist and a construction specialist demonstrated that "deterioration" required to deny coverage under the water exclusion had not occurred. Moreover, there was testimony—later qualified to some degree—from State Farm's representative Rick McEuen that neither the electrolysis nor the earth movement exclusion would bar coverage for the claimed carpet and tile damage and that, during his January 1999 inspection of the Sobleys' house, he did not observe "deterioration" or, in fact, any damage to the tile.[29]

---

[28] The jury heard evidence that State Farm sent John Owens, an electrical engineer it contracted for this case, to the Sobleys' house in November 1997 to investigate SONAT's claim that lightning, not its facilities, caused the damage to the Sobleys' pipes.

[29] The policy includes an "earth movement exclusion," which provides:

We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following

22

The Sobleys also put on evidence that, after State Farm initially obtained an affidavit from Cindy Morgan, the carpet specialist, in which State Farm asked her how water damage will generally affect a carpet but did not ask her to actually inspect the Sobleys' carpet, the Sobleys' counsel asked Morgan to inspect the Sobleys' carpet and assess the extent of the damage or "deterioration." The jury heard testimony from Morgan that her inspection in 1998 determined that the Sobleys' carpet evidenced no "deterioration," *i.e.*, decomposition or physical breakdown, or wet or dry rot and that, despite the fact that she memorialized this in an affidavit provided to State Farm in litigation, State Farm did not contact her to learn what her inspection revealed; indeed, the evidence showed that, after being sued in June 1997, State Farm continued to press the water exclusion as a basis for denying the Sobleys' claim.

The Sobleys' evidence at trial also showed that, after being sued in June 1997, State Farm invoked several policy exclusions, including the policy's earth movement exclusion, and defenses,

---

excluded events. We do not insure for such loss regardless of (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damages, arises from natural or external forces, or occurs as a result of any combination of these:
....
b. Earth Movement, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion.

including that the Sobleys failed to mitigate the water damage or engaged in neglect, intentionally misrepresented or concealed material information, and failed to provide immediate notice of loss as required under the policy. Like the earth movement exclusion, the jury heard evidence that the notice defense was raised for the first time after the Sobleys filed suit, despite State Farm's awareness at the time of its denial in April 1995 of facts which State Farm later claimed indicated that the Sobleys delayed notifying State Farm of the loss from water damage and which it claimed justified denial of their claim on this basis alone, regardless of its merits. The Sobleys also presented evidence that State Farm failed to directly answer the Sobleys' request for admissions, even on matters such as whether the Sobleys had a homeowner's policy with State Farm; that State Farm employed an allegedly overbroad definition of "deterioration" in invoking and pressing the water exclusion as a basis to deny coverage; and that State Farm pressed the interpretation of McEuen, Dillard's supervisor in April 1995, of unclear statements in Dillard's log notes from her inspection on April 21, 1995 to indicate an abbreviation for "water exclusion" and not "water leak," from which State Farm argued that Dillard had in fact raised the water exclusion with Linda Sobley on April 21, 1995 as a basis to deny the claim.

Mississippi law is well-settled that "[p]unitive damages should be assessed with caution and within narrow limits as an

24

example and warning" and that a "plaintiff has a 'heavy burden' when seeking punitive damages based on a bad faith insurance claim."[30] The evidence of State Farm's conduct in investigating and denying the Sobleys' claim, both in April 1995 and through the date of the SONAT settlement in January 1999, is simply not of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions as to whether State Farm engaged in gross and reckless disregard of the Sobleys' rights.

To begin with, although the Sobleys argued at trial that the evidence permitted an inference that Dillard denied the claim knowing it was not excluded by the electrolysis exclusion but hoping the Sobleys would not challenge it, our review of the evidence of State Farm's conduct in April 1995 in investigating the Sobleys' claim for carpet and tile damage and re-rerouting expenses and denying it on the basis of the electrolysis exclusion persuades us that, as a matter of law, it amounts to nothing more than evidence of negligent acts for which punitive damages are inappropriate under Mississippi law.[31] Thereafter, State Farm next heard from the Sobleys two years later when they sued State Farm to

---

[30] *Jenkins v. Ohio Cas. Ins. Co.*, 794 So.2d 228, 232 (Miss. 2001) (*en banc*) (quoting *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So.2d 620, 622 (Miss. 1988) (*en banc*)).

[31] *See Dixie Ins. Co. v. Mooneyhan*, 684 So.2d 574, 584 (Miss. 1996) (*en banc*); *accord Universal Life Ins. Co. v. Veasley*, 610 So.2d 290, 295 (Miss. 1992).

recoup their losses assertedly covered by their homeowner's policy. The Sobleys testified that they did not contact or follow-up with State Farm after April 1995 or challenge the basis for State Farm's denial of coverage sooner because they believed the damages were caused by electrolysis and so excluded under the policy.

We have previously observed that, although an insured may argue there should have been a more complete investigation, "there simply was no bad-faith breach of any duty to the insured who passively accepted the fact finding of the insurer's investigation."[32] There is no question but that, under Mississippi law, State Farm had a "duty to its customer to make a reasonably prompt investigation of all relevant facts"[33] and a "continuing duty to reevaluate its position when it chooses to deny a claim."[34] Here, however, there was nothing to trigger State Farm's duty to reevaluate its claim at least until the Sobleys filed suit in June 1997 and so no bad faith on State Farm's part in failing to further investigate the claim, which it had denied and which the Sobleys chose not to further pursue during the intervening period of over two years between April 1995 and June 1997.

The Sobleys' evidence of State Farm's alleged reckless disregard after June 1997 consists primarily of State Farm's

---

[32] *Dueringer v. Gen. Am. Life Ins. Co.*, 853 F.2d 283, 287 n.8 (5th Cir. 1988).

[33] *Murphee v. Fed. Ins. Co.*, 707 So.2d 523, 530 (Miss. 1997) (*en banc*).

[34] *Eichenseer*, 682 F. Supp. at 1372.

26

litigation conduct and its raising defenses and exclusions allegedly without adequate investigation. The conduct at issue, however, does not rise to the level of gross and reckless disregard for the Sobleys' rights as insureds in State Farm's investigating and continuing to deny the Sobleys' claim after June 1997 through the date of the SONAT settlement in January 1999.

On appeal, the Sobleys rely heavily on the decision of the Supreme Court of Mississippi in *State Farm Mutual Automobile Insurance Co. v. Grimes*,[35] in which the court held:

> This is not a case in which the insurance company was found to have had an arguable reason to deny a claim. Nor is it a case in which the claim was denied because of some clerical error or other inadvertence for which the imposition of punitive damages would simply be unfair. *See Universal Life Ins. Co. v. Veasley*, 610 So.2d 290 (Miss. 1992). On the contrary, here the jury could conclude that the insurer deliberately refused to pay in the face of knowledge that it could not reasonably expect to succeed on any claimed defense based upon the insured's suspected involvement in the theft of his automobile. This was not inadvertence promptly corrected; the evidence was amenable to the conclusion that there was deliberate indifference if not hostility to the right of the insured which was never corrected. After an investigation over a period which was clearly reasonable in duration from the standpoint of the insurance company, the company simply had no proof that a theft had not occurred to refute the insured's sworn claim that there was a theft supported by the fact that a motor and transmission was indubitably missing. It should have paid, and, because it did not, the issue of punitive damages was properly put before the jury.[36]

---

[35] 722 So.2d 637 (Miss. 1998) (*en banc*).

[36] *Id.* at 642.

27

On the basis of *Grimes*, the Sobleys argue that State Farm's continued denial based on its self-serving, result-oriented investigation, together with its unbelievable interpretations and application of policy provisions, sufficiently showed that State Farm's denial was not merely the product of simple oversight or a clerical mistake for which punitive damages would be improper.

While even State Farm does not claim that its post-denial and litigation conduct is the product of simple oversight or a clerical mistake, the Sobleys did not present substantial evidence from which it could be inferred that State Farm "deliberately refused to pay in the face of knowledge that it could not reasonably expect to succeed on any claimed defense" or exclusion it raised in the course of litigation.[37] This case is therefore distinguishable from *Grimes*, in which the insurer's only basis for denial was its suspicion that the insured had filed a bogus theft claim, in the absence of any "proof that a theft had not occurred to refute the insured's sworn claim that there was a theft supported by the fact that a motor and transmission was indubitably missing."[38] Although the Sobleys' counsel made much at trial of State Farm's raising the defenses of concealment or material misrepresentation, which he characterized as State Farm's calling the Sobleys liars and accusing them of being dishonest, the evidence, even taken in the

---

[37] *Id.*

[38] *Id.*

28

light most favorable to the Sobleys, showed that State Farm was not provided with potentially important information concerning the Sobleys' problems with damage to their pipes and water leakage in and around their house until after the Sobleys sued State Farm in June 1997. Under these circumstances, raising this defense and other defenses and exclusions, such as the earth movement exclusion, which might well have applied based on the newly-obtained information does not amount to gross and reckless disregard for the Sobleys' rights in the form of State Farm's allegedly manufacturing defenses after it was sued or State Farm's relying on patently unjustifiable policy exclusions for denying the claim.

On appeal, State Farm does not challenge the trial court's conclusion that there was substantial evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions as to whether the electrolysis, water, and earth movement exclusions and defenses of failure to minimize damages and intentional misrepresentation or concealment of material information which State Farm raised actually barred coverage for the Sobleys' claim. However, this conclusion is of no moment to our analysis as to whether there was substantial evidence that State Farm acted with gross and reckless disregard for the Sobleys' rights. Under Mississippi law, "[i]f there is no arguable reason found for denying the claim, the issue of punitive damages should not automatically be submitted to the

jury."[39]  Rather, "'[i]n the absence of an arguable reason for denying the claim, the trial court must still determine whether there is a jury issue as to the insurer's having committed a willful or malicious wrong, or acted with gross or reckless disregard for the insured's rights.'"[40]  An exclusion or defense can, of course, constitute an "arguable basis" even if it does not ultimately bar coverage.[41]  It follows that the fact that State Farm raised defenses and exclusions that may not actually bar coverage does not, in itself, establish that there is substantial evidence as to the issue of gross and reckless disregard.[42]

Likewise, the positions advanced by State Farm in the course of litigation, including McEuen's testimony as to his "somewhat strained interpretation of Dillard's log notes,"[43] reliance on an allegedly overbroad definition of "deterioration," and responses

---

[39]  *Murphee*, 707 So.2d at 530.

[40]  *Id.* (quoting *Pioneer Life Ins. Co. of Ill. v. Moss*, 513 So.2d 927, 930 (Miss. 1987)).

[41]  This logically follows from the definition of "arguable basis," *Grimes*, 722 So.2d at 642 (an arguable basis is a reason "sufficiently supported by credible evidence as to lead a reasonable insurer to deny the claim"), as well as Mississippi law's requirement that, "once coverage is established, a court should evaluate whether there was an arguable basis for denial of coverage based solely on the reasons for denial of coverage given to the insured by the insurance company," *Sobley I*, 210 F.3d at 564.

[42]  *Cf. Gulf Guar. Life Ins. Co. v. Kelley*, 389 So.2d 920, 923 (Miss. 1980) (*en banc*) ("Defendant had the right to interpose its defense, and although we have decided defendant was liable on its policy, we conclude there was an arguable reason for failing to pay the claim; therefore, the question of punitive damages should not have been submitted to the jury.  The trial court should have granted a peremptory instruction for the defendant on the question of punitive damages.").

[43]  *Sobley I*, 210 F.3d at 565.

denying or failing to directly answer the Sobleys' first request for admissions in discovery, are not evidence of gross and reckless disregard for the Sobleys' rights sufficient to create a jury issue as to bad faith denial of insurance coverage. Again, State Farm does not dispute on appeal the trial court's conclusion that the Sobleys presented substantial evidence as to whether there was coverage under the policy for the Sobleys' claim, whether State Farm raised the water exclusion in 1995 such that it could be an arguable basis for State Farm's denial of the Sobleys' claim, and whether the electrolysis exclusion—and possibly the water exclusion—constituted an arguable basis for denial. That these litigation positions and tactics were ultimately unsuccessful does not, however, alter the fact that such conduct does not constitute the kind of malice, willfully wrongful conduct, gross negligence, or reckless disregard for the insured's rights for which punitive damages are properly imposed under Mississippi law.[44]

As to State Farm's allegedly inadequate investigation, the Supreme Court of Mississippi has made clear that, "although it is well settled under Mississippi law that an insurance company has a duty to investigate promptly and adequately an insured's claim, a

---

[44] The trial court in its jury charge defined "gross negligence" as "a course of conduct, which under the particular circumstances in any given case, equals what amounts to a reckless indifference to the consequences of that course of conduct without any exertion of any substantial effort to avoid the consequences," and "reckless disregard" as an act "done intentionally by a person knowing or having reason to know of facts that would lead a reasonable man to realize not only that the conduct creates an unreasonable risk of harm to someone else, but also that such risk is substantially greater than that which is necessary to make his conduct simply unreasonable."

31

plaintiff's burden in proving a claim for bad faith refusal goes beyond merely demonstrating that the investigation was negligent."[45] Citing our holding in *Merchants National Bank v. Southeastern Fire Insurance Co.*,[46] the Supreme Court of Mississippi has held that "the level of negligence in conducting the investigation must be such that a proper investigation by the insurer 'would easily adduce evidence showing its defenses to be without merit.'"[47] A review of our decision upon which this holding relies reveals that evidence showing an insurer's defense to be without merit requires that further investigation would undercover evidence "that would have undermined at least the arguable merit" of the insurer's defenses.[48]

Here, the Sobleys consistently argued that the water exclusion was not raised by State Farm in April 1995 and so could not have constituted an "arguable basis" for denying the Sobleys' claim. Considering the evidence presented at trial in the light most favorable to the Sobleys, the jury apparently so found in favor of the Sobleys on the issue of arguable basis. Accordingly, there was no finding requested by the Sobleys nor made by the jury that the water exclusion would not, had it been raised by State Farm in April 1995, constitute at least an arguable basis for denying the

---

[45] *Murphee*, 707 So.2d at 531 (citation omitted).

[46] 751 F.2d 771, 777 (5th Cir. 1985).

[47] *Murphee*, 707 So.2d at 531 (quoting *Szumigala v. Nationwide Mut. Ins. Co.*, 853 F.2d 274, 280 (5th Cir. 1988)).

[48] *Szumigala*, 853 F.2d at 281.

32

Sobleys' claim, although the jury found that the water exclusion did not actually bar coverage for the claim. An arguable basis is a reason "sufficiently supported by credible evidence as to lead a reasonable insurer to deny the claim,"[49] and we understand "arguable merit" in the same light.

The evidence at trial showed that, although other witnesses, including Morgan, testified that there was no "deterioration" in the Sobleys' carpet, McEuen's inspection in early January 1999 led him to the conclusion that there was "deterioration" in the Sobleys' carpet. Accordingly, in the face of the evidence of the observations and conclusions McEuen drew from his January 1999 inspection and State Farm's interpretation of "deterioration," the Sobleys failed to present evidence that any further investigation by State Farm after suit was filed in June 1997 would have easily adduced evidence showing its defenses to coverage under the water exclusion, or, for that matter, the earth movement exclusion, to be without even arguable merit.

Based on our review of the entire record, we conclude that the Sobleys failed to present substantial evidence that State Farm acted with gross and reckless disregard for the Sobleys' rights. Accordingly, the trial court erred in denying State Farm's motion for judgment as a matter of law and submitting the bad faith issue to the jury. We therefore reverse the trial court's judgment on

---

[49] *Grimes*, 722 So.2d at 642.

the jury's punitive damage award and render judgment in favor of State Farm.

IV.

State Farm further asserts that, because the Sobleys had no entitlement to the punitive damages, they have no entitlement to an award of their attorneys' fees and expenses from State Farm. The Sobleys argue that the jury's unchallenged finding of a lack of arguable basis entitles them to extra-contractual damages in the form of attorneys' fees pursuant to the decision of the Supreme Court of Mississippi in *Universal Life Insurance Co. v. Veasley*.[50]

At the time of the first trial, the Sobleys had agreed, pursuant to their settlement agreement with SONAT, that they would not attempt to recover any actual or contractual damages from State Farm under their homeowner's policy, and the trial court, pursuant to this agreement, did not enter judgment on the amount of contractual damages which the jury found. A panel of this court has previously held that "Mississippi law does not allow the recovery of attorney's fees where the insured recovers neither actual nor punitive damages."[51] The Sobleys have pointed us to no intervening authority under Mississippi law following this post-*Veasley* holding, and we have not located any, which would negate

---

[50] 610 So.2d 290 (Miss. 1992).

[51] *Greer v. Burkhardt*, 58 F.3d 1070, 1075 (5th Cir. 1995).

34

the binding effect of this holding of a prior panel of this court.[52]

Therefore, in the absence of an award of actual damages against State Farm, and having reversed the award to the Sobleys of punitive damages, there is no basis for the award of the Sobleys' attorneys' fees and expenses from State Farm. Accordingly, we reverse the trial court's order awarding the Sobleys their attorneys' fees and expenses.

## V.

For the foregoing reasons, we REVERSE the trial court's judgment awarding the Sobleys punitive damages and order awarding the Sobleys their attorneys' fees and expenses and RENDER judgment in favor of State Farm.

---

[52] *See Ford v. Cimarron Ins. Co., Inc.*, 230 F.3d 828, 832 (5th Cir. 2000) (stating the rule that "a prior panel's interpretation of state law has binding precedential effect on other panels of this court absent a subsequent state court decision or amendment rendering our prior decision clearly wrong").

35