Frank S. TIPTON, III Plaintiff

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY Defendant**

**No. CIV.A. 1:02CV874GRo.**

United States District Court, S.D. Mississippi, Southern Division.

June 18, 2004.

David R. Mercer, Asst. Federal Public Defender, Springfield, MO, for Petitioner James William Rogers.

Paul D. Clement, Solicitor General, United States Department of Justice, Washington, DC, for Respondent United States.

John F. Humann, Buffalo, NY, for Petitioner Swazine Swindle.

Paul D. Clement, Solicitor General, United States Department of Justice, Washington, DC, for Respondent United States.

Rosemary T. Cakmis, Assistant Federal Public Defender, Orlando, FL, for Petitioner Gerald Robert Rutherford.

Paul D. Clement, Solicitor General, United States Department of Justice, Washington, DC, for Respondent United States.

Lisa B. Wright, Washington, DC, for Petitioner Andrew A. Cook, Jr. and Dale H. Smith.

Paul D. Clement, Solicitor General, United States Department of Justice, Washington, DC, for Respondent United States.

Lydia M.V. Brandt, The Brandt Law Firm, P.C., Richardson, TX, for Petitioner Juan Martin Cruz.

Paul D. Clement, Solicitor General, United States Department of Justice, Washington, DC, for Respondent United States.

## MEMORANDUM OPINION

GEX, Senior District Judge.

This cause is before the Court on the motion for partial summary judgment [28–1] filed by the Defendant, Nationwide Mutual Fire Insurance Company [Nationwide]. After due consideration of the evi-

dence of record, the briefs of the parties, and the applicable law, and being otherwise fully advised in the premises, the Court finds as follows.

### Statement of Facts

In the early morning hours of October 19, 2001, Tipton's residence at 1220 Sycamore Street in Ocean Springs, Mississippi, was destroyed by fire. (Ct. R. Doc. 28, p. 2; Ct. R., Doc. 26, Exh. A, Memorandum of Insurance.) While initial investigation showed the fire to be incendiary in nature (Ct. R., Doc. 28, Exh. 2, ¶ 7), it is the Court's understanding that the cause of the of the fire remains unknown.

At the time of the fire, Tipton's residence was insured by Nationwide against loss by fire with policy limits of $149,800 for the dwelling and $104,860 for personal property. (Ct. R., Doc. 26, Exh. A, Mem. of Ins.) Nationwide assigned Tipton's claim to property adjuster Patrick Blankenship who contacted Tipton on the day of the fire, visited the scene, and took a statement from Tipton. (Ct. R., Doc. 28, p. 2, note 1; Exh. 2, p. 1.)

At the time of the fire, the residence was occupied by Tipton, his 16–year–old daughter, and a tenant named Roseanne Tate, now Roseanne Corey.[1] Tipton's nephew, James Radcliff, was also staying in the house a few nights a week during the period in question. (Ct. R., Doc. 13, p. 2; Ct. R., Doc. 28, Exh. 6, pp. 4–5.)

Tipton made no mention of his tenant during his initial meeting with Blankenship; however, within a few days of the fire, Tipton contacted Blankenship and advised him that there was a tenant who had lost some personal property in the fire. (Ct. R., Doc. 28, Exh. 2, p. 2.) Blankenship asserts that he advised Tipton at this time that the property of the tenant would not be covered under Tipton's policy. (*Id.*) Tipton disputes this assertion. According to Tipton, he had several conversations with Blankenship concerning Tate's property, but Blankenship never gave him a definitive answer. (*Id.*, Exh. 11, p. 28.) Tipton asserts in his affidavit of February 1, 2003, that not long after the fire, he told Tate that her losses might not be covered by his insurance. (Ct. R., Doc. 13, p. 3.) According to Tipton, he gave Blankenship's number to Tate and suggested that she call Blankenship directly. (*Id.*) Tipton also asserts that he asked Tate to fax him a list of the items she lost in the fire—which she did—and to fax a copy to Blankenship as well. (Ct. R., Doc. 28, Exh. 11, pp. 28–29.) Tipton asserts that he also faxed a copy of Tate's list to Nationwide. (*Id.*, Exh. 11, p. 29.)

On October 23, 2001, Blankenship advanced Tipton $1,000 for living expenses and $2,000 as an advance against his contents coverage. (Ct. R., Doc. 28, Exh. 2, p. 2.)

In late October 2001, Blankenship received from Tipton a list of personal property items lost in the fire. The value assigned by Tipton to these items totaled $146,806. (*Id.*, Exh. 2, p. 2 & Exh. 3.) Tipton later submitted a list of additional items totaling $22,750. (*Id.*, Exh. 4.)

On October 31, 2001, Blankenship received a telephone call from Tate inquiring whether her property was covered under Tipton's policy. (*Id.*, Exh. 2, p. 2.) After Blankenship advised Tate that, due to her renter's status, there was no coverage, Tate told Blankenship that almost all of the furniture in the house belonged to her. (*Id.*) Upon discussing the matter with Tate, Blankenship observed that several

---

1. As Roseanne Corey is referred to in the majority of the record as Roseanne Tate, the Court will refer to her hereafter as Tate in an effort to avoid confusion.

items on the list of contents earlier provided by Tipton were items which Tate claimed as hers. (*Id.*)

On November 5, 2001, Blankenship paid Tipton $10,800 as a six-month advance on his living expenses. (*Id.*, Exh. 2, p. 3.)

On November 15, 2001, Blankenship contacted Tipton to advise him that he needed to submit a proof of loss form, which Tipton faxed in the same day. (*Id.*) Thereafter, Blankenship advised Tipton that the form needed to be notarized and mailed to Nationwide. (*Id.*)

On November 19, 2001, and December 5, 2001, Rob Borham of Nationwide's Special Investigation Unit took recorded statements from Tate. (*Id.*, Exhs. 5 & 6.) During the December 5, 2001, interview, Tate was asked to review the contents list submitted by Tipton and identify any items which belonged to her, items which "could be [her] property," and those items which she never saw in the house. (*Id.*, Exh. 6, p. 15.) Upon reviewing Tipton's list, Tate identified several items as belonging to her, numerous items that "could be" hers, and numerous items which she did not remember seeing in the house. When questioned regarding the value of certain items in the home, Tate was of the opinion that the values provided by Tipton exceeded the actual value of the items in the residence. (*Id.*, Exh. 6, pp. 15–35.)

On or about November 26, 2001, Blankenship received Tipton's notarized proof of loss form. (*Id.*, Exh. 2, p. 4.) In the blank designated, "The amount claimed under the ... policy," Tipton wrote, "$349,500." (Ct. R., Doc. 13, Exh. A–2.) In the margin Tipton wrote: "No way for me to know for sure but this is my best guest (sic) estimate." (*Id.*) At the top of the form, Tipton wrote: "Not sure I understand this and what you want." (*Id.*)

After receiving Tipton's proof of loss form, Blankenship sent Tipton a reservation of rights letter acknowledging receipt of Tipton's claim and advising him as follows: "The reported facts give rise to some potential coverage questions under the ... policy. The potential coverage questions being investigated concern the validity and accuracy of items claimed and valuations stated in the sworn proof of loss you submitted to Nationwide." The letter also set forth the provision of Tipton's homeowners policy concerning intentional concealment and fraud and the provision excluding tenants' property from coverage. (Blankenship's Resp. to Mot. to Remand and Cross–Mot. to Dismiss, Exh. K.)

On December 11, 2001, a Nationwide claims committee met to discuss Tipton's claim and approved an additional advance of $2,500 against Tipton's contents coverage while the investigation was pending. (Ct. R., Doc. 28, Exh. 2, p. 4.)

On December 14, 2001, Blankenship spoke to Tipton who, according to Blankenship, was upset regarding the handling of his claim. (*Id.*) Blankenship asserts that Tipton told him that if there was an issue concerning the ownership of any of the contents, Blankenship should just take off the items in question. (*Id.*) Tipton claims that sometime between October 24, 2001, and December 28, 2001, he faxed Blankenship instructions to delete any items on his list which were not covered under Tipton's policy. Tipton alleges that Blankenship responded by telling him not to worry about it. (*See* Pl's. Reb. Br. on Mot. for Remand, Aff. of Frank Tipton, p. 4.)

Nationwide retained outside counsel, Lynn Hare Phillips, of the law firm Hare, Clement and Duck, P.C., to assist in the investigation of Tipton's claim and provide an opinion regarding coverage. (Ct. R., Doc. 28, Exh. 8.) Phillips conducted an

examination of Tipton under oath on January 21, 2002. (*Id.*, Exh. 8, p. 1.) She also reviewed the statements of Tate and discussed the case with Blankenship and Borham of Nationwide. (*Id.*, Exh. 7, pp. 10–11.) In her written opinion concerning coverage, Phillips concluded that there was not sufficient evidence of arson on the part of Tipton to support a denial of the dwelling portion of the claim. (*Id.*, Exh. 8.) With regard to the contents, however, Phillips concluded that Tipton had "materially misrepresented both the contents in the home at the time of the fire as well as the value of the items." (*Id.*, Exh. 8, p. 13.) This, she stated, was sufficient basis upon which to deny the contents portion of Tipton's claim. (*Id.*, Exh. 8, p. 23.)

On April 1, 2002, a Nationwide claims committee met to discuss Phillips' legal opinion and agreed to follow her recommendation to deny Tipton's claim for contents coverage. (Ct. R., Doc. 28, p. 7.) Aggrieved, Tipton initiated the present lawsuit seeking $130,820 for unpaid insurance benefits and $5,000,000 in punitive damages.[2] (Ct. R., Doc. 1, Compl.)

Tipton has never disputed that certain items on the list of contents he provided to Nationwide belonged to Tate, but he asserts that he never sought to receive compensation from Nationwide for her property. (Ct. R., Doc. 26, p. 2; Ct. R., Doc. 28, Exh. 11, pp. 32–33.) According to Tipton, at the time he submitted his lists to Blankenship, he was not sure whether the items of personal property owned by Tate and his nephew were covered by his policy. (Ct. R., Doc. 26, p. 2.) Tipton claims that he was simply following Blankenship's instructions to list all of the contents of the house and use his "best guess estimate" concerning the value of the items. (*Id.*, p. 1.) Tipton states in his affidavit of February 10, 2003:

> ... [I]n accordance with Mr. Blankenship's instructions to, "write down everything," I listed items belonging to Ms. Tate which I knew had been in the living room and the dining room. Since I did not know what Ms. Tate had in her bedroom, I made no attempt to list those items. My nephew provided me with a hand-written list of his property lost in the fire, and I forwarded this to Mr. Blankenship. I also forwarded to Mr. Blankenship a listing, which Rosanne Tate provided to me, of her personal property lost in the fire. Some of the items on this listing had already been included on the lists I had previously submitted.

(*Id.*, p. 2.) At his deposition of January 26, 2004, Tipton stated further:

> A. ... [W]hen Mr. Blankenship originally told me to write items down, I asked him at that time, do I write everything down? And I explained to him that I had my nephew's and Ms. Tate's stuff, but I didn't know what she had in her room. I asked him, do you mean just write everything down? And he told me, yes.
>
> Q. So what you're saying then is Mr. Blankenship told you even if it didn't belong to you, that he wanted you to put it on your list.
>
> A. He didn't differentiate that. He just told me to write everything down.

---

**2.** Tipton's lawsuit, originally filed in the Circuit Court of Jackson County against both Nationwide and Blankenship, was removed to this Court on December 9, 2002. (Ct. R., Doc. 1.) On the motion to remand filed by Tipton, the Court determined that Blanken-

ship had been fraudulently joined for purposes of diversity jurisdiction. (Ct. R., Doc. 17, p. 3.) Accordingly, Tipton's motion for remand was denied, and Blankenship was dismissed from the case. (Ct. R., Doc. 16.)

He knew that Ms. Tate and my nephew both lived there.

(Ct. R., Doc. 28, Exh. 11, p. 33.)

Blankenship disputes that he told Tipton to simply write everything down. (Ct. R., Doc. 34, Exh. M—5, p. 20.) According to Blankenship, he advised Tipton to "write down room by room his contents that were lost in the fire and describe them and place a replacement cost and date on them..." (Id., Exh. M—5, p. 17.)

As for his proof of loss, Tipton asserts that he filled out the form the best way he could and "just claimed the policy limit for loss of contents because, even without including anything belonging to Ms. Tate or personal property losses which [Tipton] had not claimed, [Tipton's] losses exceeded the policy limit." (Ct. R., Doc. 13, pp. 3–4.)

## Standard of Review

This cause is currently before the Court on Nationwide's motion for partial summary judgment on Tipton's claim for bad faith. (Ct. R., Doc. 28.) Summary judgment, where appropriate, is designed "to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1, 56; Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citation and internal quotation marks omitted). A district court may properly grant a motion for summary judgment when, after viewing the facts in the light most favorable to the nonmoving party, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Deas v. River West, L.P., 152 F.3d 471, 475 (5th Cir. 1998). Stated differently, summary judgment must be entered against a nonmoving party if that party fails to make a showing sufficient to establish the existence of a genuine issue of fact essential to that party's case. Celotex, 477 U.S. at 322–23, 106 S.Ct. 2548.

## Legal Analysis

In its motion for partial summary judgment, Nationwide seeks dismissal of Tipton's bad faith claim on the basis that Nationwide reasonably relied on the advice of counsel in denying the contents claim. (Ct. R., Doc. 28.) According to Nationwide, its reliance was reasonable and in good faith "... in light of the information learned from Roseanne Tate that Mr. Tipton was claiming some items which belonged to her, others which were not in the residence at all and was exaggerating the value of many items that were lost." (Ct. R., Doc. 29, p. 12.) Nationwide also points out that in recent weeks, Tipton has submitted two receipts for items lost in the fire which, according to Nationwide, demonstrate that Tipton exaggerated the value of his property. (Ct. R., Doc. 28, pp. 8–9.) One of the receipts is for bedroom furniture purchased by Tipton from Bassett Furniture Direct in 1999 at a cost of $3,981. (Id., Exh. 10.) The other receipt is for hearing aids from the Hearing and Balance Center in the amount of $4,000. (Id.) On his lists of contents, Tipton stated the replacement cost of the furniture as $8,300 and the hearing aids as $5,500. (Id., Exh. 3.)

When questioned regarding these receipts during his deposition, Tipton testified that he went to Basset after the fire to see if they had any record of his purchases. (Ct. R., Doc. 29, Exh. 11, p. 132.) He asserts that the receipt in question does not reflect all of the items he purchased from Basset, but it was all the store could find. (Id.) With regard to the hearing aids, Tipton testified that his doc-

tor told him they were worth $5,500 when he got them. (*Id.,* Exh. 11, p. 144.) The receipt for $4,000, was the cost of hearing aids he purchased in October of 2003, two years after the fire. (*Id.*)

Tipton argues that summary judgment on his bad faith claim would be inappropriate because reasonable minds could disagree whether Nationwide "(a) reasonably relied on an objective opinion of attorney Lynn Hare [Phillips], or (b) ignoring facts readily available to it, requested and purchased a favorable opinion behind which it could hide." (Ct. R., Doc. 35, pp. 1–2.)

■ Punitive damages are not favored under Mississippi law; "they are considered an extraordinary remedy and are allowed 'within caution and with narrow limits.'" *Mississippi Power & Light Co. v. Cook,* 832 So.2d 474, 485 (Miss.2002) (quoting *Life & Cas. Ins. Co. of Tenn. v. Bristow,* 529 So.2d 620, 622 (Miss.1988)). The plaintiff seeking punitive damages based on a bad faith insurance claim bears a heavy burden. *Jenkins v. Ohio Cas. Ins. Co.,* 794 So.2d 228, 232 (Miss.2001) (*en banc*) (quoting *Life & Cas. Ins. Co. of Tenn. v. Bristow,* 529 So.2d at 622). "The fact that an insurer's decision to deny benefits may ultimately turn out to be incorrect does not in and of itself warrant an award of punitive damages..." *Liberty Mut. Ins. Co. v. McKneely,* 862 So.2d 530, 533 (Miss.2003) (citing *State Farm Mut. Auto. Ins. Co. v. Grimes,* 722 So.2d 637, 641 (Miss.1998)).

The issue of punitive damages should not be submitted to the jury unless the trial court determines that there are jury issues with regard to whether:

1. The insurer lacked an arguable or legitimate basis for denying the claim, *and*

2. The insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights.

*Jenkins,* 794 So.2d at 232–233 (quoting *Grimes,* 722 So.2d at 641). "[B]oth [are] questions of law to be decided by the trial judge." *Jenkins,* 794 So.2d at 233 (citing *Bristow,* 529 So.2d at 623).

The crux of Tipton's argument in opposition to summary judgment on his bad faith claim is that Nationwide's reliance on Phillips' legal opinion and Tate's statement's to Nationwide representatives was not reasonable. (Ct. R., Doc. 35, pp. 2–3.) Tipton argues:

An impartial jury could easily find that, without a prior disposition to do so, no reasonably diligent and objective claims investigator (or attorney) would totally credit, in all respects, the unsworn statements of a woman who initially attempted to have Tipton commit insurance fraud on her behalf,[3] who as a single person renting a room, claimed to own "almost all" the furniture in a four bedroom house, and who, in her own words, said "I just want see him ... and I just want sue him."

(*Id.,* p. 3 (Internal citations omitted.)) Tipton submits that the "lack of believability" of Tate's statements should have been apparent to Nationwide. (*Id.,* p. 4.) Tipton points to the leading nature of the questions posed to Tate and the convenient answers she provided. Tipton cites the following exchange between Tate and Bor-

---

**3.** Tate stated during her November 19, 2001, interview with Borham that after the fire, she asked Tipton if he would claim her items under his policy as most of the furniture was hers. According to Tate, Tipton declined adamantly stating that such would be fraud and he might not get any money. (Ct. R., Doc. 28, Exh. 5, p. 9.) Tate asserts that she apologized to Tipton. She explained: "I didn't want to get him in any trouble, but I wanted to be somehow reimbursed..." (*Id.,* Exh. 5, p. 5.)

ham, regarding the list of contents provided by Tipton:

> Borham: And then 32 says jeans 5. Didn't you tell me that you had a lot of jeans. Could 31 be your property?
>
> Tate: Oh, absolutely.

Having reviewed Tate's recorded statements in their entirety, the Court agrees that certain of the questions posed by Nationwide representatives were suggestive. Tate also evidenced, at times, an eagerness to identify her own items on the lists compiled by Tipton. It cannot be ignored, however, that Tate clearly identified specific items on Tipton's lists as belonging to her and multiple items which she did not remember seeing in the home. (*Id.*) Tate also cast doubt on the values Tipton attributed to certain items. The evidence is unrebutted that Tate, who lived in Tipton's home for over three months, told Nationwide representatives that most of the furniture in the house belonged to her. Further, as evidenced by her affidavit, Tate stands by her previous statements concerning the contents of Tipton's home and will offer testimony to the effect that Tipton misrepresented the ownership, presence, and value of numerous items in his home at the time of the fire.

For Tipton to survive summary judgment on his bad faith claim the Court must find that a material issue of fact exists as whether Nationwide (1) lacked an arguable or legitimate basis for denying Tipton's claim and (2) committed a wilful or malicious wrong or acted with gross and reckless disregard for Tipton's rights. *See Jenkins,* 794 So.2d at 232–233.

An arguable reason for the denial of an insured's claim, such as will insulate the insurer from a subsequent claim for punitive damages, has been defined as "one in support of which there is some credible evidence. There may well be evidence to the contrary. A person is said to have an arguable reason for acting if there is some credible evidence that supports the conclusion on the basis of which he acts."

*American Mfrs. Mut. Ins. Co. v. Cupstid,* 673 F.Supp. 186, 188 (S.D.Miss.1987) (quoting *Blue Cross and Blue Shield of Mississippi v. Campbell,* 466 So.2d 833, 851 (Miss.1984)). Courts have also recognized that in the vast majority of cases, "[u]nless the trial judge grants a directed verdict to the insured plaintiff on the contract claim, then, as a matter of law, the insured's carrier has shown a reasonably arguable basis to deny the claim." *Prudential Property and Cas. Ins. Co. v. Mohrman,* 828 F.Supp. 432, 440 (S.D.Miss. 1993) (quoting *Blue Cross & Blue Shield of Mississippi, Inc. v. Campbell,* 466 So.2d at 843 and citing *Dunn v. State Farm Fire & Casualty Co.,* 927 F.2d 869, 872 (5th Cir. 1991)).

 In light of Tate's statements that Tipton misrepresented the ownership, value, and presence of items in his home at the time of the fire, the Court finds that credible evidence existed to support Nationwide's denial of Tipton's contents claim. Consequently, the Court finds that Nationwide had an arguable reason for its denial. The Court further finds that Tipton has submitted no evidence from which reasonable, fair-minded jurors could find that Nationwide committed a wilful or malicious wrong or acted with gross and reckless disregard for Tipton's rights. The Court, therefore, finds that Nationwide's motion for summary judgment on Tipton's claim for bad faith and associated claim for punitive damages should be granted.

Before concluding, the Court will address briefly Tipton's argument that summary judgment on his bad faith claim is inappropriate on the basis that Nationwide has been, in Tipton's estimation, less than forthcoming in its discovery responses.

(Ct. R., Doc. 35, pp. 4–6.) Tipton asserts that Nationwide has failed to respond to his request to specifically identify each item of personal property the existence of, the value of, or the ownership of it disputes—instead referring Tipton to Phillips' coverage opinion and the statements of Tate. (*Id.*, p. 4.) Tipton also asserts that Phillips relied in her opinion on certain statements taken from Tipton and Carla Powell, Tipton's ex-girlfriend, which have not been produced. (*Id.*, p. 5.) Finally, Tipton states that Nationwide has failed to produce Borham's notes and logs, Blankenship's notes and photographs, and the correspondence between Phillips and Nationwide relative to Phillips' compensation and instructions in this case. (*Id.*, pp. 5–6.) Tipton submits that Nationwide's withholding of this information is itself evidence of bad faith which should be considered by a jury.

In response, Nationwide asserts that Tipton has never requested Borham's notes and logs or the photographs taken by Blankenship. (Ct. R., Doc. 36, p. 3.) As for the statement of Powell and the correspondence between Nationwide and Phillips, Nationwide asserts that it properly objected to their production. Nationwide argues that if Tipton was dissatisfied with Nationwide's discovery responses, he should have sent a good faith letter to counsel opposite followed, if necessary, by a motion to compel. (*Id.*) Nationwide submits that Tipton, having done neither, should not be allowed to avoid summary judgment on basis of allegedly inadequate discovery.

 Under the circumstances presented, the Court agrees with the Defendant that the appropriate remedy for Tipton's dissatisfaction with Nationwide's discovery responses would have been to promptly file a motion to compel. Even now, Tipton does not seek to discover the information about which he complains, but instead argues that Nationwide's alleged conduct is evidence of bad faith which should be considered by a jury. (Ct. R., Doc. 35, p. 6.) Evidence of an insurer's post-denial conduct can be relevant to a claim for bad faith denial of insurance coverage. *Sobley v. Southern Natural Gas Co.*, 302 F.3d 325, 335–335 (5th Cir.2002) (citing *Gregory v. Cont'l Ins. Co.*, 575 So.2d 534, 541–42 (Miss. 1990) (*en banc*); accord *Eichenseer v. Reserve Life Ins. Co.*, 682 F.Supp. 1355, 1372 (N.D.Miss.1988) *aff'd*, 881 F.2d 1355 (5th Cir.1989); *vacated on other grounds*, 499 U.S. 914, 111 S.Ct. 1298, 113 L.Ed.2d 233 (1991)). The Court finds, however, that Tipton's allegations concerning discovery, even if true, do not demonstrate "... the kind of malice, willfully wrongful conduct, gross negligence, or reckless disregard for the insured's rights for which punitive damages are properly imposed under Mississippi law." *Sobley*, 302 F.3d at 341–342. Further, the Court finds that submitting Tipton's bad faith claim to the jury solely on the basis of Nationwide's alleged discovery violations would be a disproportionate sanction.

### Conclusion

For the reasons stated above, the Court finds that Nationwide had an arguable reason for its denial of Tipton's contents claim and that Tipton has failed to present sufficient evidence to create an issue of fact concerning whether Nationwide committed a wilful or malicious wrong or acted with gross and reckless disregard for Tipton's rights. The Court, therefore, finds that Nationwide's motion for partial summary judgment [28–1] on Tipton's claim for bad faith and associated claim for punitive damages should be granted.

A separate Judgment in accordance with this Memorandum Opinion shall issue this date.

*ORDER*

This cause comes before the Court on the motion for partial summary judgment [25-1] filed by the Plaintiff Frank S. Tipton, III [Tipton]. After due consideration of the evidence of record, the briefs of the parties, and the applicable law, and being otherwise fully advised in the premises, the Court finds as follows.

On February 11, 2004, Tipton filed a motion seeking partial summary judgment on his claim for insurance benefits under his homeowner's policy with the defendant, Nationwide Mutual Fire Insurance Company [Nationwide]. (Ct. R., Doc. 25.) Nationwide responded on February 20, 2004, arguing that the pleadings and discovery process clearly establish genuine issues of material fact and law concerning Tipton's claim for benefits. (Ct. R., Doc. 31.) Nationwide has also offered the affidavit of Tipton's former tenant, Roseanne Tate Corey [Tate] stating that Tipton misrepresented the ownership, presence, and value of numerous items in his home at the time of the fire. (Ct. R., Doc. 30, Exh. 1.)

In his reply dated February 26, 2004, Tipton acknowledged that Tate's affidavit creates a legitimate issue of material fact with respect to Tipton's claim for benefits. (Ct. R., Doc. 32.) Tipton, therefore, does not contest the denial of his motion for partial summary judgment on this issue.

As Tipton concedes that material issues of fact preclude summary judgment on his claim for benefits, the Court finds that Tipton's motion for partial summary judgment [25-1] should be denied. It is, therefore,

ORDERED AND ADJUDGED that the Plaintiff's motion for partial summary judgment [25-1] be, and is hereby, denied. It is further,

ORDERED AND ADJUDGED that each party shall bear their respective costs in association with this motion.